# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| EVER-SEAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:22-cv-00365 |
| v. | ) | |
| | ) | **JUDGE RICHARDSON** |
| DURASEAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF STEPHEN BRADLEY HALFERTY

I, Stephen Bradley Halferty, having been duly sworn, depose and state that:

1. I am above eighteen (18) years of age and have personal knowledge of the facts and circumstances set forth herein.

2. I formed DuraSeal, Inc. using LegalZoom on or around August 31, 2021.

3. DuraSeal, Inc. is a Delaware corporation with its principal place of business in North Carolina where I have resided since 1996.

4. I am the sole shareholder and only officer and director of DuraSeal, Inc.

5. At the time that I formed DuraSeal, Inc., I intended to use it to operate a business to pressure wash and seal driveways and decks. Since forming it, however, I have not used it to conduct any business. In fact, at this time, it is my understanding that DuraSeal, Inc. will be administratively dissolved by the Delaware Secretary of State due to nonpayment of the annual filing fees, which I understand were due on March 1, 2022.

6.     At all times relevant to the Complaint in this action, including, but not limited to, from January 1, 2020 to the present, DuraSeal, Inc. has not actually conducted any business in any location, state, or country. Any business conducted as "DuraSeal" was conducted as a sole proprietorship, which is how Ever-Seal, Inc. originally sued me and that sole proprietorship both in the United States District Court for the Middle District of Tennessee and the United States Bankruptcy Court for the Eastern District of North Carolina. It was only after this Court stayed Ever-Seal's lawsuit against me individually and doing business as "DuraSeal" and the U.S. Bankruptcy Court for the Eastern District of North Carolina denied Ever-Seal's request for injunctive relief that Ever-Seal commenced this action against DuraSeal, Inc.

7.     DuraSeal, Inc. is an empty, corporate shell that has never conducted any business. Although I intended to operate as DuraSeal, Inc., due to a lack of sophistication on my part, I never actually operated as DuraSeal, Inc. Rather, I always operated as a sole proprietorship and continue to do so.

8.     DuraSeal, Inc. does not have officers or directors other than me.

9.     DuraSeal, Inc. has never had an annual or company meeting.

10.    DuraSeal, Inc. has not adopted any bylaws or consents.

11.    DuraSeal, Inc. does not have any bank accounts or credit card accounts.

12.    DuraSeal, Inc. does not have any insurance policies. Any such policies are in the name of me doing business as "DuraSeal."

13.    DuraSeal, Inc. does not own any property or have any assets or have an office.

14.    DuraSeal, Inc. has never prepared or issued any financial statements.

15.     DuraSeal, Inc. has never filed any state or federal taxes or tax returns. When I file my personal tax returns later this year, I intend to file on behalf of myself and my sole proprietorship, but not DuraSeal, Inc. since it has never generated any revenue.

16.     DuraSeal, Inc. has never entered into any contracts or agreements with third-parties. Any agreements with customers were entered into between me operating as a sole proprietorship and the customer.

17.     DuraSeal, Inc. has never employed or hired any employees, contractors, or workers. My sole proprietorship, however, has employed and retained multiple employees, contractors, and workers, and their compensation has been paid from my personal bank accounts and not from any account in the name of DuraSeal, Inc.

18.     I purchased the domain DuraSealit.com, which is owned by me individually and is the only domain I have used for my sealant business that I started in 2021, using my personal credit card. A true and correct copy of the receipt for my purchase of this domain is attached below. While potential customers may schedule consultations through my website, Tennessee does not appear as an option for consultation because I do not do business in Tennessee.



19.     I advertise on behalf of my sole proprietorship, "DuraSeal," in various markets, excluding any in Tennessee. I often purchase print advertisements in home guides like the one below. My advertisements do not and have never referred to "DuraSeal, Inc." They only refer to "DuraSeal."





20.     I also send postcards to some of the zip codes we serve, which excludes Tennessee. As true and correct copy of a sample of those postcards is included below. Those postcards do not and have never mentioned "DuraSeal, Inc."







21.     I have attached as Exhibit 1 a true and correct copy of an invoice from Money Pages, which a company I advertise with, which shows that the account is in the name of "DuraSeal" and not "DuraSeal, Inc."

22.     When interested customers contact us to obtain more information or to schedule a consultation, we do not represent ourselves as anything other than "DuraSeal." We do not and have never held ourselves out as "DuraSeal, Inc."

23.     When my employees and contractors meet with prospective customers, they typically show the customer a presentation. A true and correct copy of the presentation I have used and continue to use is attached as Exhibit 2. That presentation does not reference "DuraSeal, Inc." It only references my sole proprietorship, which is "DuraSeal."

24.     When my employees and contractors provide a bid or estimate to prospective customers, they use an Estimate Worksheet, a true and correct copy of which is attached as Exhibit 3. That Estimate Worksheet refers to "DuraSeal" and not "DuraSeal, Inc."

25. If a customer decides to hire my sole proprietorship, I have them sign a contract. A true and correct copy of the contract I use is attached as <u>Exhibit 4</u>. That contract states that the agreement is between the customer and "DuraSeal," not DuraSeal, Inc.

26. When a client pays me for its services, those funds are deposited into my personal checking accounts, which are the only accounts I have used for "DuraSeal." My wife and I have always used Wells Fargo accounts 4052 and 7342 for employee and contractor payments. (Wells Fargo 4052 has been closed, so I currently do not have access to statements from it.) Likewise, checks from DuraSeal's customers have been deposited to one of those two personal checking accounts, and merchant account payments are deposited into our personal checking accounts. A true and correct copy of the header to my October 2021 statement for Wells Fargo account 7342 is attached below. As you can see, that account is in the name of me and my wife. It is not in the name of DuraSeal, Inc. or even "DuraSeal."

October 7, 2021  ■  Page 2 of 10                                         

Go to wellsfargo.com/personalloan or call 1-855-324-9370 Monday through Friday, from 8:00 a.m. to 7:00 p.m. Central Time.

| Statement period activity summary | | Account number: |7342 |
|---|---|---|---|
| Beginning balance on 9/9 | $1,148.21 | AMY PREUSS HALFERTY | |
| Deposits/Additions | 37,722.39 | STEPHEN HALFERTY | |
| Withdrawals/Subtractions | - 33,761.35 | ALY HALFERTY | |
| Ending balance on 10/7 | $5,109.25 | North Carolina account terms and conditions apply | |

27. When I pay my employees and contractors, their pay statement refers to "DuraSeal" and not "DuraSeal, Inc." For example, a true and correct copy of a pay statement to Baille Morlidge is attached as <u>Exhibit 5</u>.The funds for those payments come from my personal checking account, Wells Fargo account 7342, that I own jointly with my wife. Again, DuraSeal, Inc. does not have and has never had any accounts. A true and correct copy of a payment to Baille

Morlidge from me and my wife's checking account is attached below. All payments to employees or contractors of my sole proprietorship have come from our personal checking accounts.



28.     I use QuickBooks to keep track of the income and expenses of my sole proprietorship. True and correct copies of my sole proprietorship's financial statements are attached as Exhibit 6. Those statements only refer to "DuraSeal" and not "DuraSeal, Inc."

29.     During discovery in my pending Chapter 13 bankruptcy action in North Carolina, I produced a list of all of my clients. A true and correct copy of that list is attached as Exhibit 7. It refers to "DuraSeal's" customers, not "DuraSeal, Inc.'s customers. That is because DuraSeal, Inc. has never conducted any business and has no customers.

30.     Since starting my own driveway and deck sealing business, I have never indicated or represented that I am doing business as "DuraSeal, Inc." or acted through that corporate form.

31.     My sole proprietorship only does business in North Carolina, South Carolina, Georgia, and Florida. It has never done any business in Tennessee.

32.     When I was deposed in my pending bankruptcy action, I was asked whether I incorporated "DuraSeal" as an S-corporation, which I confirmed because DuraSeal, Inc. is an S-corporation. Counsel for Ever-Seal did not ask me any clarifying questions, such as whether I operated my business as an S-corporation or a sole proprietorship, and I did not volunteer any. Since this deposition, Ever-Seal has misconstrued the nature of my answer. I am not an attorney and am not legally trained. I do not consider a sole proprietorship to be a company or entity, just a business name that I am using to conduct business personally. Had I known that Ever-Seal would misconstrue my answer as representing that I was actively conducting business through DuraSeal, Inc., I would have elaborated and explained my answer further. By informing Ever-Seal's counsel of what type of entity DuraSeal, Inc. is, I was in no way intending to convey that I have ever operated or done business on behalf or through DuraSeal, Inc.

33.     DuraSeal, Inc. has never transacted business within Tennessee or any state.

34.     DuraSeal, Inc. has not committed any tortious act or omission within Tennessee or any other state or caused any tortious injury by an act or omission in Tennessee or any other state.

35.     DuraSeal, Inc. has not ever, and certainly does not regularly, solicit business or engage in any other persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in Tennessee or any other state.

36.     DuraSeal, Inc. does not own or possess any interest in property located in Tennessee or any other state.

37.     DuraSeal, Inc. does not have an interest in, use, or possess real property in Tennessee or any other state.

38.     DuraSeal, Inc. has not entered into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within Tennessee or any other state at the time of contracting.

39.     DuraSeal, Inc. has not entered into any contract for services to be rendered for materials to be furnished in Tennessee or any other state.

40.     DuraSeal, Inc. has not contracted to supply services or things in Tennessee or any other state.

41.     Notably, Ever-Seal does not allege and provides no evidence to support any of the foregoing. Instead, Ever-Seal attempts to establish that this Court has personal jurisdiction over DuraSeal, Inc. by relying on my alleged individual actions and the actions of others rather than any actions by or on behalf of DuraSeal, Inc.

42.     Ever-Seal alleges that I traveled to Tennessee to purchase chemicals that DuraSeal, Inc. allegedly used to conduct business in North Carolina and elsewhere. (As noted above, DuraSeal, Inc. has never actually conducted business anywhere.) However, the incident that Ever-Seal refers to occurred on August 16, 2021 before DuraSeal, Inc. was formed on August 31 2021. In August 2021, but before August 31, 2021, I moved my daughter to college in Wisconsin and had to rent a U-Haul moving trailer to move her. On the way back from Wisconsin, I stopped in Tennessee to purchase some chemicals from Absolute Chemicals for use by me operating as a sole proprietorship.  Those chemicals were purchased using *my* personal credit card, and that statement was paid from my personal checking account. The chemicals I purchased were never used by DuraSeal, Inc. and were never intended to be used by DuraSeal, Inc. since it had not even been formed when I purchased them. Those chemicals are not proprietary. Anyone can purchase them,

and to my knowledge they are actually mixed by a company in Atlanta, Georgia. In other words, those chemicals are not even produced in Tennessee. A true and correct copy of my purchase receipt and invoice from August 16, 2021 is included below.



43.     Ever-Seal also alleges that this Court has jurisdiction over DuraSeal, Inc. because "DuraSeal" hired two of its former employees and allegedly relied on training they received while at Ever-Seal.  As discussed above, DuraSeal, Inc. has never hired any employee, contractor, or worker. Two former Ever-Seal employees were hired by me individually to work for my sole proprietorship. Since DuraSeal, Inc. has never hired any of Ever-Seal's former employees and never conducted any business, it certainly has not used any training that those individuals may have received before they voluntarily left Ever-Seal.

44.     Further, while Kevin Goggins and Tim Lucero worked with my sole proprietorship, they did not receive any specialized training from Ever-Seal. Their decision to work for me certainly did not represent any intentional action by DuraSeal, Inc. to avail itself of the benefits of Tennessee. Mr. Goggins trained in North Carolina but worked for Ever-Seal in Nashville, Tennessee. I hired him after he had quit his job at Ever-Seal and traveled for approximately one month. Likewise, Mr. Lucero trained in North Carolina but worked for Ever-Seal in Kentucky. He worked for my sole proprietorship only after he told me that he was quitting due to concerns with Ever-Seal's customer complaints, lack of leads, and improper management.

45.     I also have never done in any training in Tennessee. When I started at Ever-Seal, its owner, Steve Nelson, traveled to North Carolina to "train" me on how to do sales presentations, which I had already been doing for decades. The "training" involved me riding around in a vehicle with Mr. Nelson in Raleigh and Charlotte and watching him do sales presentations for the first two-and-a-half days. By that point, I knew the material and process well enough that I could do it on my own. As a result, rather than staying for the standard four days, Mr. Nelson returned to Tennessee after approximately only two days. Mr. Nelson never gave me any training in Tennessee.

46.     I declare under penalty of perjury that the foregoing is true and correct.

**FURTHER DECLARANT SAITH NOT.**


_____          **July 1, 2022**
**Stephen Bradley Halferty**                        **Date (mm/dd/yyyy)**

# EXHIBIT 1



7892 Baymeadows Way
Jacksonville, FL 32256
904-306-0086

DuraSea
1132 Shadow Lake Dr ve
Ra e gh, NC 27615

Date: 04/13/2022



Pr mary Contact:
Brad Hafferty
(919) 369-8823
brad@durasea t.com

Account Executive:
Leigh Anne Luckey
leighanne.luckey@moneypages.com

| Issue | Ad Size | Ad Notes | Gross | Discount | Total Due |
|---|---|---|---|---|---|
| May 2022 North Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| May 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| May 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| May 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| May 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| June 2022 North Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| June 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| June 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| June 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| June 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| July 2022 North Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| July 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| July 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| July 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| July 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| August 2022 North Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| August 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| August 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| August 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| August 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| September 2022 North Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| September 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| September 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| September 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| September 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| October 2022 East Cobb | 1/2 Page | | $799.00 | ($290.00) | $509.00 |
| October 2022 North Atlanta | 1/2 Page Franchise | | $899.00 | ($399.00) | $500.00 |
| **Advertisements** | | | | | **$8,653.00** |



7892 Baymeadows Way
Jacksonville, FL 32256
904-306-0086

| Issue | Ad Size | Ad Notes | Gross | Discount | Total Due |
|-------|---------|----------|-------|----------|-----------|
| October 2022 North Atlanta | Call Tracking | | $50.00 | ($50.00) | $0.00 |
| October 2022 North Atlanta | Technology Fee | | $9.00 | $0.00 | $9.00 |
| **Advertisements** | | | | | **$8,653.00** |

Total Cash Due $8,653.00

Order Notes:
C ent may cance w th 30 days wr tten not ce

**Additional Information**

| | | | | | |
|---|---|---|---|---|---|
| **Authorize Recurring Credit Card Charge?** | Yes | **First Payment Date (mm/dd/yy)** | 04/28/2022 | **Month Payment(s) Begin** | 4-Apr |
| **Form of Payment** | CREDIT CARD 28TH OF EA MO | | | | |

PO Number: xxxxx

This Agreemen is be ween Money Pages o lorida nc a lorida corpora ion ( Money Pages ) and he undersigned adver iser ( Adver iser ) This Agreemen is made up o he prin ed erms and he Terms and Condi ions on his documen he Adver iser is a corpora ion or o her limi ed liabili y en i y hen he individual signing his Agreemen on behal o he Adver iser personally guaran ees paymen o Money Pages when due all amoun s due by Adver iser under his Agreemen

**I have read this entire Agreement and understand and agree to its terms.**

| | | | |
|---|---|---|---|
| **Representative** Le gh Anne Luckey | **Date** 04/13/2022 | **Customer Signature** Brad Hafferty | **Date** 04/14/2022 |

D g ta S gnature Captured (04/14/2022)

**Terms and Conditions** – *Unless otherwise provided herein, these Terms and Conditions ("Terms and Conditions") apply to all Advertising, Video Production, Digital, and Website Hosting Services provided to Client by Money Pages*

**1. Term.** This Agreement is effective as of the most recent date of execution on the first page of this Agreement (the "Effective Date"). For all services except Advertising and Website Hosting Services, this Agreement remains in effect until completion of the project, as contracted. With respect to Website Hosting Services, this Agreement remains in effect for twelve (12) months after the Effective Date and will automatically renew on a monthly basis starting on the first day of the thirteenth (13th) month (the "Website Hosting Term"), unless Client gives Money Pages written notice of cancellation at least thirty (30) days before the start of the thirteenth (13th) month of the Website Hosting Term. With respect to Advertising Services, this Agreement remains in effect from the Effective Date until the "End Date" section written on the first page of this Agreement ("**Advertising Services Term**").

**2. Termination.** Except for Advertising Services, either party may terminate this Agreement by providing thirty (30) days' written notice to the other party. If Client elects to terminate this agreement, Client shall pay to Money Pages the full value of the contract not more than thirty (30) days after Money Pages' receipt of Client's notice of termination. With respect to Video Production Services, if Client terminates this Agreement or reschedules at a time that is less than twenty-four (24) hours prior to the production date, Client shall pay to Money Pages all crew costs plus expenses incurred, in addition to any other fees contemplated under this Agreement.

**3. Payment for Services Rendered.** Except for Advertising Services, Client is responsible for payment to Money Pages for all services rendered. Regarding any one-time project, such as a website, fifty percent (50%) of the total cost is due upon execution of this Agreement. Money Pages will not begin work on the project until the first fifty percent (50%) of the total cost has been received. The remaining balance is due thirty (30) days after work begins on the project or completion of the project, whichever comes first. Monthly projects, including other digital marketing and web hosting services, will be billed as agreed upon by both parties. Client is also liable for any plugin costs purchased during the website build. Money Pages shall communicate all plugin costs with Client prior to purchasing.

**4. Default in Payment.** Client shall pay all amounts due to Money Pages according to the terms of this Agreement. Default occurs when an outstanding balance remains on Client's account either thirty (30) days after work on Client's project begins, or upon completion of such project, whichever occurs first. Client understands that a 1-1/2% monthly service charge (18% per annum) will be assessed on any past due amounts and will apply to any judgment obtained against Client or Personal Guarantor in connection with default under this Agreement. If Client defaults on payment under this Agreement, Client and Personal Guarantor shall pay all costs of collection when incurred, including but not limited to, reasonable attorneys' fees regardless of whether a legal action is filed, as well as attorney fees incurred in litigating entitlement to, and quantifying the amount of, attorney fees. Client permits Money Pages to store the credit card information printed on the first page of this Agreement, and to charge such credit card on the day Client defaults under this Section 4.

**5. Termination Fee.** If Client terminates this Agreement in accordance with Section 2 on a date that is more than ten (10) business days after the Execution Date, Client shall pay Money Pages a $750 fee (the "Termination Fee") in addition to any other fees contemplated by this Agreement. =This section will not apply to Video Production or Advertising Services.

**6. Methods of Contact.** Money Pages primary method of contact with Client will be via email and telephone. All communication between Client and Money Pages will be between the Client and either the account executive or client relations specialist. Money Pages will not be liable for information communicated to Client by any person who is not the account executive or client relations specialist. Telephone calls and on-premise meetings will be billed at the hourly rate in half hour increments; the hourly rate for Website Hosting and Digital Services shall be one hundred fifty dollars ($150) and eighty dollars ($80) for Video Production Services. Money Pages shall notify Client of any increases in hourly rates no later than thirty (30) days before that increase becomes effective.

**7. Compatibility:** Money Pages will make every reasonable attempt to ensure that websites and digital services rendered display properly on browsers including, but not limited to, Microsoft Internet Explorer v9.0 and higher, Google Chrome 29.0.1547.76 m and higher, and Mozilla Firefox v7.0 and higher.

**8. Availability of Client Staff and Materials.** Client will make available to the Money Pages team, appropriate resources and personnel required to complete this project in a timely manner. Client assumes all liability and responsibility for the accuracy and content of information provided to Money Pages. Client assumes all liability for delays in completing the services contemplated by this Agreement, if such delays arise from Client's failure to make available to Money Pages the appropriate personnel and resources required to complete the project.a

**9. Ownership.**

a. Notwithstanding anything to the contrary in this Agreement or any other contract, Money Pages retains all rights and ownership of the work product created in connection with the Digital Services, including without limitation, the website, domain name, design elements, website content, and website data created for Client by Money Pages, until Money Pages receives payment in full for such work product.

b. Notwithstanding anything to the contrary in this Agreement or any other contract, Money Pages retains all rights and ownership of any proprietary software used in connection with the Video Production and Web Hosting Services and any photography purchased under the Money Pages company name. Money Pages is not liable for any of the Client's distribution of photography purchased under the Money Pages company name other than the work on the website created within this Agreement. Client retains ownership of any photography it provides or purchases in connection with the Digital Services.

c. Client acknowledges that rights to and ownership in any third-party proprietary software used in the construction of the website is retained by the lawful owner. Money Pages shall secure licensing for Client usage of such software, as necessary, in accordance with the software licensing agreement.

**10. Intellectual Property.** Client represents that Client is the sole, exclusive, and

undisputed legal and beneficial owner of any and all intellectual property rights to any content and subject matter supplied by Client to Money Pages (collectively, "Content") to be included in the work product created under this Agreement, including without limitation, any and all copyrights, trademarks, service marks, and patents. Client further warrants and represents that it is authorized to, and does hereby, grant permission to Money Pages to reproduce, copy, distribute, publish, and reprint the Content in any advertisements in magazines, print, media, and electronic publications and applications.

**11. Confidentiality.** Money Pages shall maintain the confidentiality of all Client information which, at the time of first disclosure to Money Pages, is clearly identified as confidential ("Client's Confidential Information"). Money Pages will keep Client's Confidential Information confidential for three (3) years after the completion date of the Client project during which the information was disclosed. Money Pages is never required to keep as confidential any information which (a) is, or becomes, publicly known; (b) is already within Money Pages possession or knowledge at the time of first disclosure; or (c) is rightfully obtained from third parties.

**12. Objectionable Content or Activities.** Money Pages may terminate this Agreement without prior notice or liability if Client adds or submits objectionable or inappropriate content, as determined in Money Pages' sole discretion, to or for the website or video created for Client under this Agreement or uses the development website or video production in connection with objectionable or inappropriate activities, such as client-provided plagiarized content.

**13. Indemnification.** Client shall indemnify, defend, and hold harmless Money Pages and Money Pages' officers, directors, employees, agents, successors, and assigns (each, a "Money Pages Indemnitee") from and against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, and the cost of enforcing any right to indemnification hereunder, that are incurred by a Money Pages Indemnitee, arising out of or resulting from any claim, suit, action, or proceeding (each, an "Action") alleging Client's breach of this Agreement, negligence related to performance under this Agreement, or any type of intellectual property infringement or other challenge to Client's representation made in this Agreement.

**14. Limitation of Liability.** Except as otherwise provided in this Agreement, IN NO EVENT SHALL Money Pages OR ANY OF ITS REPRESENTATIVES BE LIABLE UNDER THIS AGREEMENT TO CLIENT OR ANY THIRD PARTY UNDER ANY THEORY OF RECOVERY, WHETHER BASED IN CONTRACT, IN TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY), UNDER WARRANTY, OR OTHERWISE, FOR CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR ENHANCED DAMAGES, ARISING OUT OF, OR RELATING TO ANY BREACH OF THIS AGREEMENT, REGARDLESS OF: (i) WHETHER SUCH DAMAGES WERE FORESEEABLE; and (ii) WHETHER MONEY PAGES WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**15. Entire Agreement.** This Agreement, the terms on the first page of this Agreement and these Terms and Conditions,, constitute the entire agreement with respect to the subject matter of this Agreement and supersede all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter.

**16. Venue.** Client and Personal Guarantor agree that regardless of place of payment all suits at law and equity for any breach of this Agreement or for default in payment shall be instituted and maintained in a court of competent jurisdiction in Duval County, Florida and Client and Guarantor waive any defenses based on venue or forum non conveniens. This Agreement contains the entire agreement between the parties and may not be modified or amended except by a writing signed by both parties. The terms of this Agreement shall be governed by the laws of the State of Florida and the undersigned submits to the jurisdiction of the Courts of the State of Florida.

**17. Amendment and Modification.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by Client and Money Pages. If Client claims an oral cancellation or change occurred, then such cancellation or change must be put into writing and signed by the parties hereto, which signature Money Pages may withhold for any reason, within ten (10) days after the alleged date of oral change or cancellation, otherwise, said change or cancellation is deemed waived.

**No Waiver.** No waiver by either party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, 18. breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**19. Force Majeure.** Except as specifically addressed by this Agreement, neither party shall be liable for delay in performance hereunder due to causes beyond its reasonable control, including without limitation, acts of God, strikes, civil strife, acts of terrorism, or shortage of adequate power or transportation facilities.

**20. Additional Terms Regarding Advertising Services Only.**

a. INVOICES ARE DUE UPON RECEIPT. Client shall direct payment to Money Pages at the corporate office either by mail or telephone. Client acknowledges receipt of and agrees to the schedule of rates and all other terms, conditions, and regulations of the most recent retail display advertising rate card (the "Rate Card"). Money Pages may revise the schedule of rates and alter any of the terms, conditions, and regulations of the Rate Card (collectively, "Rate Revision") by giving Client thirty (30) days written notice of its intent to alter. Client agrees to be bound by such Rate Revision unless Client gives Money Pages written notice of cancellation within ten (10) days after receiving notice of the Rate Revision. If Client elects to terminate this Agreement because of a Rate Revision, the advertising lineage run will be charged at the rate actually earned and will be calculated by annualizing the lineage run at the actual earned rate throughout the Advertising Services Term. Client agrees that for any ad not paid within ten (10) days of final proof, the billed rate will revert to the non-discounted rate regardless of any discount rate that would have been otherwise granted to Client, and a service charge of 1.5% per month of the unpaid principal balance owed to Money Pages will be added to all past due accounts. Money Pages reserves the right to cancel further insertions of advertisements if payments are not received when due. If Client is thirty (30) days in arrears on any amounts due and unpaid to Money Pages, Client hereby authorizes Money Pages to secure payment through the use of the stored credit card information. If Money Pages erroneously charges the stored credit card, Money Pages retains the right to charge the credit card for the appropriate amount, regardless of whether Client keeps his ad in the Money Pages magazine and digital application. Additionally, Money Pages may at any time deduct from Client's security deposit any past due amounts. A service fee in the highest amount allowed by law will be charged on all dishonored checks. Client's total fees include a non-negotiable, nine-dollar ($9.00) technology fee assessed monthly throughout the advertisement's running time.

b. Client may cancel an ad with written notice, received at least forty-five (45) days prior to the published in-home date. Because Money Pages provides discounts based on an advertisement's running time, if Client cancels an ad prior to completing the agreed upon number of insertions, Money Pages will recalculate the amounts due to it from Client by charging Client the full, non-discounted rate for all advertisements that have already run to completion at the time cancellation becomes effective, and Client agrees to pay such recalculated amounts. In addition to the foregoing, Money Pages may also seek damages for any breach of this Agreement. If Client has contracted for exclusive products, Client may cancel without penalty within three (3) days of signing the contract if no ad copy has been submitted. On the fourth day, if no ad copy has been submitted, Client is responsible for 50% of all unpublished exclusive products. If ad copy has been submitted, Client is responsible for the full contracted amount of the exclusive product.

c. Client shall provide all copy for advertisements prior to the copy deadline, of which Money Pages shall advise Client from time to time. If space is reserved and Client does not meet copy deadline, Money Pages may insert a previous advertisement, or if there has been no previous advertisement, Money Pages may prepare and insert an advertisement without Client's prior approval of copy or layout, and Client shall pay any additional costs incurred by Money Pages in so doing. MONEY PAGES RESERVES THE RIGHT TO ACCEPT OR REJECT ALL ADVERTISING TO BE PUBLISHED. Money Pages may require the word "advertisement" to appear in any advertisement(s) and may modify any advertisement in any way necessary to comply with applicable laws.

d. If Client is supplying camera-ready artwork, Client shall provide Money Pages complete material, ready for publication and printing, as soon as possible, but in no event later than the deadline specified to Client by Money Pages. All camera-ready submissions must comply with the most recent Money Pages specifications sheet. Specification sheets are available via fax or e-mail from the Production Manager or Money Pages Account Manager. Money Pages is not liable for any difference in resolution or quality between the artwork as submitted by Client and as it appears in the printed ad. Client is responsible for submitting artwork of the same quality expected from the printed ad.

e. Money Pages makes reasonable efforts to check each submitted element or factor that would render the faithful reproduction of the advertisement. Client agrees that Money Pages will not be liable for any claims arising from: (i) small color shifts between supplied proof and printed ad; (ii) large color shifts if supplied proof is of inferior-quality; (iii) missing fonts or graphics; (iv) scans supplied at lower-than-optimal resolution; (iv) artwork submitted at a size that does not match the agreed upon ad space; (v) incorrectly placed graphics; (vi) misspellings and other factors or errors deemed to be the ad creator's responsibility; (vii) errors in typeset copy of any ad not approved by Client in which a reasonable attempt has been made by Money Pages to obtain approval for the ad. Moreover, Money Pages will make reasonable efforts to match color screens. However, due to printing and ink variances, Money Pages cannot guarantee exact color matches. Client agrees to be bound by the terms of this Agreement despite any color variances and shall not be entitled to any rebate due to the same. Client should contact Money Pages Production Manager prior to submission to verify specifications and procedures.

f. If Client engages Money Pages to design, produce, and prepare Client's advertisement(s), Client agrees to provide Money Pages with photos, logos, copy, and the like as soon as possible, but no later than the specified deadlines for the publication. Client further agrees to remit payment in full upon receipt of invoice for such design, production, and preparation.

**21. Waiver of Jury Trial.** EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (D) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 21.

# EXHIBIT 2



**PERMANENT PROTECTION FOR WOOD & CONCRETE**

Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 19 of 63 PageID #: 388

# PROTECTING YOUR WOOD





# 2. REBUILD

Pine $$$

Exotic $$$$

Composite $$$$$

Not "maintenance-free"

High cost/low resale value



Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 22 of 63 PageID #: 591



| PROJECT TYPE | RALEIGH | | |
| --- | --- | --- | --- |
| **MIDRANGE** | **Job Cost** | **Resale Value** | **Cost Recouped** |
| Attic Insulation (fiberglass) | $1,301 | $1,800 | 138.3% |
| Backup Power Generator | 12,072 | 4,000 | 33.1% |
| Backyard Patio | 47,369 | 19,286 | 40.7% |
| Basement Remodel | 63,732 | 41,000 | 64.3% |
| Bathroom Addition | 38,597 | 22,400 | 58.0% |
| Bathroom Remodel | 16,565 | 10,286 | 62.1% |
| Deck Addition (composite) | 16,106 | 6,286 | 39.0% |
| Deck Addition (wood) | 9,564 | 5,083 | 53.2% |
| Entry Door Replacement (fiberglass) | 3,222 | 1,643 | 51.0% |
| Entry Door Replacement (steel) | 1,355 | 860 | 63.4% |
| Family Room Addition | 86,971 | 49,075 | 56.4% |
| Garage Door Replacement | 1,639 | 1,200 | 73.2% |

# 3. IT'S A PAIN TO STAIN

Takes about a week
Repeat every 1-3 years
Thin layer of protection
Doesn't lock out moisture





# 55+ YEAR TRACK RECORD



## Highways & bridges
## Telephone poles

DuraSeal
PERMANENT PROTECTION FOR WOOD & CONCRETE

# Any market with sun & humidity is a great market







**Family owned & operated
50+ year track record
Top-rated company
25 year warranty**





# CONCRETE & PAVERS

Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 30 of 63 PageID #: 399

# CONCRETE

**PENETRANT – NOT A TOP-COAT**

**PERMANENTLY LOCKS OUT MOISTURE, LIMITING MOLD, MILDEW & FUNGUS**

**EASIER SPILL CLEANUP**

**PREVENTS FURTHER DETERIORATION LIKE CRACKING, PITTING & SPALLING**



# CONCRETE

**PREVENTS ROOT SYSTEMS FROM PUSHING THROUGH CONCRETE**

**STRENGTHENS CONCRETE 25%**

**LEAVES A NATURAL FINISH**

**PROTECTS REBAR FROM RUST & CORROSION**

Case 3:22-cv-00365   Document    Page 32 of 63 PageID #: 401

# THE DURASEAL PROCESS

- **Not affected by rain**
- **Finished in one day**
- **Retains texture & traction**



Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 33 of 63 PageID #: 402

# 1. MASKING



# 2. DEEP CLEAN FOAM





# 3. DEEP RINSE

## Rinse 2-3x

DuraSeal
PERMANENT PROTECTION FOR WOOD & CONCRETE

# 4. TWO COATS SEALANT



# 5. CLEANUP



# ULTRA LOW MAINTENANCE



**Nothing absorbs past 1/8"**
**Hose-pressure is sufficient**
**Can be power washed**

# THE BEST EQUIPMENT

**Hot PW units
300' of hose
70 PSI pumps**



# THE BEST CREWS



**All employees – no subs**
**Background checked**
**Fully insured**





**Safe**
**Non-toxic**
**Bio-degradable**



USDA-APPROVED FOR
BEEHIVES

BEES ARE VERY
SENSITIVE

# SUMMARY

**PENETRANT – NOT A TOP-COAT**

**PERMANENTLY LOCKS OUT MOISTURE, LIMITING MOLD, MILDEW & FUNGUS**

**PREVENTS FURTHER DETERIORATION LIKE WARPING, ROTTING & SPLITTING**

DuraSeal
PERMANENT PROTECTION FOR WOOD & CONCRETE

# SUMMARY

**FLAME-RETARDANT**

**STRENGTHENS WOOD & CONCRETE 25%**

**LEAVES A NATURAL FINISH**

**EXTENDS LIFE OF STAIN & PAINT 300%**

**25 YEAR MANUFACTURER'S WARRANTY**



# YOUR ESTIMATE



- **SURFACE CONDITIONS**
- **MEASUREMENTS**
- **LOGISTICS**
- **EQUIPMENT REQUIRED**



# PERMANENT PROTECTION FOR WOOD & CONCRETE

# EXHIBIT 3

# ESTIMATE WORKSHEET

**REP:**

| WOOD | AREA | RATE | CONCRETE | AREA | RATE |
|---|---|---|---|---|---|
| FLAT SURFACE | | | DRIVEWAY | | |
| RAILS | | | SIDEWALK | | |
| STEPS | | | PORCH | | |
| STEPS | | | PATIO | | |
| WALLS | | | GARAGE | | |
| BENCH | | | POOL | | |
| PERGOLA | | | OTHER | | |
| SKIRTING | | | OTHER | | |
| POSTS | | | OTHER | | |
| POSTS | | | OTHER | | |
| FENCE/STYLE | | | OTHER | | |
| OTHER | | | OTHER | | |

| SOLUTION | MAGIC | KNOCK OFF | NONE (NEW) |
|---|---|---|---|
| SOAK TIME | | | |

TOP-COAT   HEAVY   MODERATE   LIGHT   NONE

EQUIPMENT   STEP   EXTENSION   NO LADDER   EXTRA HOSE

WATER   CITY   WELL   PRESSURE   GOOD   OKAY   BAD

NOTES



888-660-0260
durasealit.com



50+ YEARS OF PROVEN RESULTS
PENETRATING SEALANT, NOT A TOPCOAT
SAFE FOR PEOPLE, PLANTS & PETS
PERMANENTLY LOCKS OUT MOISTURE
PREVENTS SPLITTING, CRACKING, WARPING
EASIER SPILL CLEANUP
PROFESSIONALLY TRAINED EMPLOYEES

888-660-0260
durasealit.com

| CUSTOMER: | DATE: |
|---|---|

| | | BEST VALUE |
|---|---|---|
| **RETAIL** GOOD FOR ONE YEAR | **PROMO PRICE** GOOD FOR 30 DAYS | **EFFICIENCY DISCOUNT** TODAY ONLY |
| $ | $<br><br>SAVE $_____ | $<br><br>SAVE $_____ |
| | **25% OFF** CHECK/CARD/FINANCE | **35% OFF** CHECK/CARD |

LOCK IN THE BEST VALUE WITH YOUR $_____ DEPOSIT

**NO INTEREST FINANCING**
12 MONTHLY PAYMENTS OF $_____

OPTION  1
OPTION  2

All options quoted at 35% off retail

# EXHIBIT 4



**888-660-0260**
**www.durasealit.com**

| Rep: | Brad Halferty |
|---|---|
| Phone: | 919-369-8823 |

| NAME | | PHONE | |
|---|---|---|---|
| ADDRESS | | PHONE | |
| CITY | | STATE | | ZIP | | EMAIL | |

| | | SCOPE OF WORK | INVESTMENT | | |
|---|---|---|---|---|---|
| _____ | Deck | | | | |
| _____ | Rails | | | **WOOD** | **CONCRETE** |
| _____ | Steps | | | | |
| _____ | Siding | | RETAIL | $ | $ |
| _____ | Pergola | | DISCOUNT | $ | $ |
| _____ | Bench | | SUBTOTAL | $ | $ |
| _____ | Posts | | DEPOSIT | $ | $ |
| _____ | Fence | | BALANCE | $ | $ |
| _____ | Skirting | | | | |
| _____ | Other | | $ | $ | $ |
| _____ | Other | | **TOTAL** | **DEPOSIT** | **BALANCE** |
| _____ | Other | | | | |

| | | **TERMS & CONDITIONS** |
|---|---|---|
| _____ | Driveway | Customer is reponsible for moving all small, personal & valuable items away from the work area |
| _____ | Sidewalk | Adjacent areas will get dirty; DuraSeal will rinse these areas at the end of the project |
| _____ | Pool | DuraSeal does not guarantee complete removal of any coatings; 85-95% is sufficient to seal completely |
| _____ | Porch | The installation process can make the wood appear fuzzy; this usually goes away during the curing process |
| _____ | Patio | DuraSeal is a penetrating sealant; water does not bead up on the surface after sealing |
| _____ | Masonry | DuraSeal is applied to saturated surfaces and is not affected by rain during the service |
| _____ | Stone | When removing topcoats, every effort will be made to protect adjacent surfaces to minimize touch-ups |
| _____ | Other | Once sealed, outdoor surfaces still get dirty and graying or hazing can occur, requiring periodic cleaning |
| _____ | New | DuraSeal does not guarantee uniformity of color - only restoration to the surface's clean, natural color |
| _____ | Weathere | If we cannot use customer's water, a water truck will be required at customer's expense ($400-500) |
| _____ | Magic | If a lift is required to safely access any surfaces (chimneys, gables etc), rental of lift is at customer's expense |
| _____ | Knockoff | |

| _____ | Step ladd |
|---|---|
| _____ | Ext ladde |
| _____ | Low pres |
| _____ | Well wate |
| _____ | Water tru |
| _____ | Extra hos |

_____        _____
Customer Signature                                      Date

_____        _____
Representative Signature                              Date

# EXHIBIT 5



**PAYROLL WORKSHEET**

| | | | Sales Commissions | $1 248 10 |
|---|---|---|---|---|
| | | | Gas Bonus | $ 210 00 |
| | | | Production | $2 496 20 |
| | | | Chargebacks | $ (112 20) |
| **Name** | Bai ie Mor idge | | Reimbursements | $ - |
| **Date** | 2/28/22 | | **Total** | **$3,842.10** |

| Sales | Contract | Rate | Gas | Total |
|---|---|---|---|---|
| | $ 1 202 | 5% | $ 30 | $ 60 10 |
| | $ 2 762 | 5% | $ 30 | $ 138 10 |
| | $ 1 100 | 5% | $ 30 | $ 55 00 |
| | $ 2 996 | 5% | $ 30 | $ 149 80 |
| | $ 12 932 | 5% | $ 30 | $ 646 60 |
| | $ 1 202 | 5% | $ 30 | $ 60 10 |
| | $ 2 768 | 5% | $ 30 | $ 138 40 |
| **Total** | $ 24,962 | | $ 210 | $1,248.10 |

| Production | Contract | Rate | Total |
|---|---|---|---|
| | $ 1 202 | 10% | $ 120 20 |
| | $ 2 762 | 10% | $ 276 20 |
| | $ 1 100 | 10% | $ 110 00 |
| | $ 2 996 | 10% | $ 299 60 |
| | $ 12 932 | 10% | $ 1 293 20 |
| | $ 1 202 | 10% | $ 120 20 |
| | $ 2 768 | 10% | $ 276 80 |
| | $ - | | $ - |
| | $ - | | $ - |
| | $ - | | $ - |
| | $ - | | $ - |
| | $ - | | $ - |
| **Total** | $ 24,962 | | $ 2,496.20 |

| Chargebacks | Description | Amount |
|---|---|---|
| Fe sberg | $1122 contract adjustment | $ 112 20 |
| **Total** | | **$ 112.20** |

| Reimbursements | Description | Amount |
|---|---|---|
| **Total** | | **$ -** |

# EXHIBIT 6

DuraSeal
Profit and Loss Standard
January 1 through May 2, 2022

|  | Jan 1 – May 2, '22 |
|---|---|
| **Ordinary Income/Expense** | |
| Income | |
| Interest income | 5.34 |
| Services Income | 142,010.04 |
| **Total Income** | 142,015.38 |
| Cost of Goods Sold | |
| Contracted Services | 8,325.00 |
| Labor | 16,240.17 |
| Materials | 6,801.24 |
| Merchant Fees | 3,925.66 |
| Supplies | 1,833.07 |
| **Total COGS** | 37,125.14 |
| **Gross Profit** | 104,890.24 |
| Expense | |
| Service Charge | 282.93 |
| Administrative Expense | 1,411.76 |
| Advertising and Promo... | 46,933.52 |
| Automobile Expense | 2,028.06 |
| Equipment | 205.79 |
| Meals and Entertainment | 3,099.14 |
| Office Expense | 415.08 |
| Postage and Delivery | 11.60 |
| Printing | 110.64 |
| Rental Expense | 819.24 |
| Sales Commissions | 20,419.95 |
| Software | 2,267.59 |
| Telephone Expense | 882.57 |
| Travel Expense | 5,204.67 |
| Vehicle Expense | |
| Gas | 5,269.25 |
| Maintenance | 712.97 |
| **Total Vehicle Expense** | 5,982.22 |
| **Total Expense** | 90,074.76 |
| **Net Ordinary Income** | 14,815.48 |
| **Net Income** | 14,815.48 |

Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 56 of 63 PageID #: 425

|                                | Jan 1, '21 – May 2, '22 |
|--------------------------------|------------------------:|
| **Ordinary Income/Expense**    |                         |
| **Income**                     |                         |
| Interest income                |                    5.34 |
| Services Income                |              519,628.90 |
| **Total Income**               |              519,634.24 |
|                                |                         |
| **Cost of Goods Sold**         |                         |
| Contracted Services            |                8,325.00 |
| Labor                          |               38,224.50 |
| Materials                      |               26,678.50 |
| Merchant Fees                  |               10,530.64 |
| Repairs and Maintenance        |                2,900.00 |
| Supplies                       |                6,357.88 |
| **Total COGS**                 |               93,016.52 |
|                                |                         |
| **Gross Profit**               |              426,617.72 |
|                                |                         |
| **Expense**                    |                         |
| Service Charge                 |                  317.93 |
| Administrative Expense         |               14,483.19 |
| Advertising and Promotion      |              200,318.73 |
| Automobile Expense             |                2,028.06 |
| Education                      |                1,485.00 |
| Equipment                      |               34,843.06 |
| Interest Expense               |                1,372.95 |
| Legal Expenses                 |                  543.00 |
| Meals and Entertainment        |                4,635.80 |
| Office Expense                 |                4,051.11 |
| Office Supplies                |                  300.29 |
| Postage and Delivery           |                   20.30 |
| Printing                       |                  525.95 |
| Rental Expense                 |               14,216.05 |
| Safety Equipment               |                  436.06 |
| Sales Commissions              |                         |
| Bonus                          |                2,075.38 |
| Fuel Bonus                     |                2,160.00 |
| Sales Commissions – Ot...      |               62,847.52 |
| **Total Sales Commissions**    |               67,082.90 |
|                                |                         |
| Software                       |                8,700.90 |
| Telephone Expense              |                1,482.65 |
| Travel Expense                 |               20,570.42 |
| Uniforms                       |                  139.38 |
| Vehicle Expense                |                         |

Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 57 of 63 PageID #: 426

DuraSeal
Profit and Loss Standard
January 1, 2021 through May 2, 2022

|  | Jan 1, '21 – May 2, '22 |
|---|---|
| Gas | 10,938.43 |
| Maintenance | 1,974.84 |
| Repairs | 1,958.75 |
| Vehicle Expense – Other | 33.77 |
| Total Vehicle Expense | 14,905.79 |
| Total Expense | 392,459.52 |
| Net Ordinary Income | 34,158.20 |
| Net Income | 34,158.20 |

Case 3:22-cv-00365   Document 43-1   Filed 07/01/22   Page 58 of 63 PageID #: 427

# EXHIBIT 7

DuraSeal Customers 04-20-22

| display_name | url | primary_contact_primary_phone | primary_contact_primary_email |
|---|---|---|---|
| Gary Williams | https://app.companycam.com/embed/projects/LAwm7XzbYVXJGiqu | | |
| walter wilson | https://app.companycam.com/embed/projects/7tdXtbQLXhd3DQTv | | |
| Marilyn Maloney | https://app.companycam.com/embed/projects/nqALa1rfCgygLCcY | | |
| Cheri Adkins | https://app.companycam.com/embed/projects/7MqWXxEu7U35q4kE | | |
| Judy Fuller | https://app.companycam.com/embed/projects/JgaLuq52FhtU4s7s | | |
| Kevin Lyon | https://app.companycam.com/embed/projects/uXpjdfXfmRTfhLnv | | |
| Tim Bassette | https://app.companycam.com/embed/projects/AQa2R3jUcKQQ9Fbr | | |
| Kathie Rush | https://app.companycam.com/embed/projects/jRGyY93NwSSepta4 | | |
| Cynthia Carter | https://app.companycam.com/embed/projects/oq7wnWGnR9Wo7mHW | | |
| Alan Hall | https://app.companycam.com/embed/projects/Jk3vHYCmpDBA5Zof | | |
| Elesshia English | https://app.companycam.com/embed/projects/U7x8dCVdmico8GpL | | |
| Phil Lucas | https://app.companycam.com/embed/projects/hNxmefedjFwugHZn | | |
| Mark Thompson | https://app.companycam.com/embed/projects/prfwYRkxUyXKz3RR | | |
| Libby Mitchiner | https://app.companycam.com/embed/projects/euP472EjUESKQ4x1 | | |
| Malcolm and Mona Roberts(BLAST) | https://app.companycam.com/embed/projects/BwS3uFRowrVAQ4PZ | | |
| JoAnne Oncea | https://app.companycam.com/embed/projects/XPpLp2PNegFjFmg5 | | |
| Jason Scott | https://app.companycam.com/embed/projects/bdKWDYjc9gffS27t | | |
| Chris Martin | https://app.companycam.com/embed/projects/JzywE711viChFCEH | | |
| Joe Almeida | https://app.companycam.com/projects/34029011 | | |
| Donna Ennis | https://app.companycam.com/embed/projects/DFM84WYy3rJCdGvq | | |
| Marty Helms | https://app.companycam.com/embed/projects/aacz6HuXUTmrR6J4 | | |
| Dennis Myles | https://app.companycam.com/embed/projects/7xK2smu3GQ6uQvML | | |
| Bob Hammond | https://app.companycam.com/embed/projects/MGsi9kgz2eCi6v7J | | |
| Laura Payne | https://app.companycam.com/embed/projects/3Rh76KbV5nVKYgNa | | |
| Bill Mize | https://app.companycam.com/embed/projects/BnT6s2BUgF1fvfWZ | | |
| Mary Winslow | https://app.companycam.com/embed/projects/MsA6nBZ9WtVZQ8pC | | |
| David Motta | https://app.companycam.com/projects/32723014/photos | | |
| Cacky West | https://app.companycam.com/embed/projects/xPzEE5kNk9v397Ah | | |
| Chris Plummer | https://app.companycam.com/embed/projects/S88iYjDZrF1phPbh | | |
| John Dounoucos | https://app.companycam.com/embed/projects/yNdMBqWMpsBbaSD1 | | |
| Phillip Barbieri | https://app.companycam.com/embed/projects/iRN1jDxDsqpKjyj6 | | |
| Ray Lutz | https://app.companycam.com/embed/projects/3ru6pnajcfc53G12 | | |
| Kevin Darby | https://app.companycam.com/embed/projects/GrFb7QQ8bmwoAGLA | | |
| Tim Laspaluto | https://app.companycam.com/embed/projects/FcMNfJr7YjxvDN5E | | |
| Jill Hanna | https://app.companycam.com/embed/projects/318yoX1gg3Kjbtzk | | |
| Paige Garriques | https://app.companycam.com/embed/projects/hBmzA2cCSMQ4EpME | | |
| Donna Young | https://app.companycam.com/embed/projects/94BavHs52fgSAh3H | | |
| Joel Weintraub | https://app.companycam.com/embed/projects/khnWEhoEMWApF7Ft | | |
| Joyce Erickson | https://app.companycam.com/embed/projects/mBcUEDaMMqHs3B2B | | |
| Mirium Cantino | https://app.companycam.com/embed/projects/8Vk8UDDEeiANWWDJ | | |
| Nancy Alsobrook | https://app.companycam.com/embed/projects/rpQmgG2QFCPJ4xQN | | |
| Dina Goddard | https://app.companycam.com/embed/projects/QbBKp9LfpUTr6Ynh | | |
| Jim Kasper | https://app.companycam.com/embed/projects/fqBVKeKMkyF2eX2A | | |
| Janet Sarabia | https://app.companycam.com/embed/projects/nKtGLSc2eyKThG7G | | |
| Bruce Hull | https://app.companycam.com/embed/projects/odqkt4Ja1WnxDGyr | | |
| Paul O'Bryant (BLAST) | https://app.companycam.com/embed/projects/4NnrAwSdWFFZCd6U | | |
| Susan Wall | https://app.companycam.com/embed/projects/mjuidjyp6p4nysGP | | |
| Eric Guinn | https://app.companycam.com/embed/projects/RzQzq3pQRxhKWXNU | | |
| Ashley Ritch | https://app.companycam.com/embed/projects/FzUcjwd3j4XCiMj5 | | |
| Corinne Perry | https://app.companycam.com/embed/projects/yXEpWFEnQV13fAr5 | | |
| Faye Stanley | https://app.companycam.com/embed/projects/o2JQwb4mYKeBgUjS | | |
| Beatrice Edwards II | https://app.companycam.com/embed/projects/8THYTBvjAEKo4Lod | | |
| William Speed | https://app.companycam.com/embed/projects/qmRHhUbmdMGefdAb | | |
| Brian Moskop | https://app.companycam.com/embed/projects/FSdBogXtgUVn3gkN | | |
| Kathleen Curto | https://app.companycam.com/embed/projects/gDgUoeAoZ9rp92Nb | | |

1

| | |
|---|---|
| Sean Claypool | https://app.companycam.com/embed/projects/q27o2U4CFNygxypM |
| Susan Lamy | https://app.companycam.com/projects/35181339/photos |
| Lyn Herdt | https://app.companycam.com/embed/projects/jQwkGCjHY1STA1qW |
| Darlene Winston | https://app.companycam.com/embed/projects/RDVGyVX9j75E3nix |
| Don Ellis | https://app.companycam.com/embed/projects/eVx7iNhsbVWkTojF |
| Diane Danner | https://app.companycam.com/embed/projects/rN4A9TezvWsfd48z |
| Brett Cramer | https://app.companycam.com/embed/projects/yEh7D11DhFc2ApqB |
| Gary Waye | https://app.companycam.com/embed/projects/xwgh2vcDkEbEwUkN |
| Ralph Danley | https://app.companycam.com/embed/projects/VHJJ9wE3r9kMuM6G |
| Leslie Gathright | https://app.companycam.com/embed/projects/JJrtDN4tsW8UXFtP |
| Peggy Canady | https://app.companycam.com/embed/projects/UBKJWVZhv6BjA4kF |
| Lisa Gurkin | https://app.companycam.com/embed/projects/JeMv26Yjhm4HoGU3 |
| Cindy Merritt | https://app.companycam.com/embed/projects/ooQvGkzNWmSc2hPG |
| Dennis Beemer | https://app.companycam.com/embed/projects/U74Uz7dAN1aMTj8c |
| Frank Hempfling | https://app.companycam.com/embed/projects/1vvU8raRR8ixipCF |
| Ted Picano | https://app.companycam.com/embed/projects/oYWNixgUw6yUFgju |
| Tom Kaznowski | https://app.companycam.com/embed/projects/9DCBYCUE4E8uZFop |
| Denise Dennis | https://app.companycam.com/embed/projects/FwqUXScmUdJgAP1L |
| Tom Misuraca | https://app.companycam.com/embed/projects/AtJitzNsmXDZS4EW |
| Michael McQuaide | https://app.companycam.com/embed/projects/6KBbGpcpSBRGJKHK |
| Michelle Hawkins | https://app.companycam.com/embed/projects/WJ8uhvFozU9FHTEd |
| Dave McIntyre | https://app.companycam.com/embed/projects/qPVmsuyk4TQ8SRgh |
| Roy Slagle | https://app.companycam.com/projects/33508983 |
| Larry Staudmeister | https://app.companycam.com/embed/projects/KH3stoT9roaFBTTd |
| Cynthia Henley | https://app.companycam.com/embed/projects/yb4P3bP1QKG5XyZT |
| Robert Blackwood | https://app.companycam.com/embed/projects/s7c22hoR86tZQVY8 |
| Cheryl Champion | https://app.companycam.com/embed/projects/LUzPRwrKKBpd7pKq |
| Pat Shapiro | https://app.companycam.com/embed/projects/rqXowqXctt17v5yy |
| Virginia Meares | https://app.companycam.com/embed/projects/a12xfoD3uCeajWGn |
| Beth Grumbles | https://app.companycam.com/embed/projects/AFDHEy6xuDk7vU6c |
| Douglas Holzworth | https://app.companycam.com/embed/projects/fJK69ysjyuiBe5ZF |
| Barbara Provin | https://app.companycam.com/projects/35945926 |
| Debbie Deskins | https://app.companycam.com/embed/projects/DkbupfdKmHdpeBoU |
| Ruth Carpenter | https://app.companycam.com/embed/projects/4LvaZToK2qXYKmuR |
| Laura Harris | https://app.companycam.com/embed/projects/XMfQ9RT3su8i43jC |
| Steve Mele | https://app.companycam.com/embed/projects/5uobDBhqG7mFkDvi |
| Darren Kozinski | https://app.companycam.com/embed/projects/WsRFWm339KxPMJU8 |
| Joe Balickie | https://app.companycam.com/embed/projects/wFqk7L8HgGESiqrU |
| Mark Yarborough | https://app.companycam.com/embed/projects/RTYZX7cNmgGJKRKt8 |
| Dwight Lowery | https://app.companycam.com/embed/projects/wkT3Uhsd32EdA9wd |
| Jack & Kathy McElroy | https://app.companycam.com/embed/projects/UWTVoXy6UnxLEvuz |
| Rick Guyer | https://app.companycam.com/projects/32722874/photos |
| Steve Finnegan | https://app.companycam.com/embed/projects/TzrXV1uiK3AmYS3r |
| Soon Kwark | https://app.companycam.com/embed/projects/FkzcveTQSqUCNicZ |
| Katrisia Armstrong | https://app.companycam.com/embed/projects/gCEiJeAQwh5cyVZ5 |
| Herbert Stuckey | https://app.companycam.com/projects/34976640 |
| Donna Lamm | https://app.companycam.com/embed/projects/vhhXR8MkFeegpmhw |
| William Hatcher | https://app.companycam.com/embed/projects/u65dTe46FAgBAc2v |
| Norma Jerby | https://app.companycam.com/embed/projects/FEnWPPh1AEPGbrmv |
| Ron Melvin | https://app.companycam.com/embed/projects/8fCZPfgEshs3Ajr1 |
| Jennifer Ovanna | https://app.companycam.com/embed/projects/PLhZQsp4SJsyySDq |
| Thelma Jenkins | https://app.companycam.com/embed/projects/693SaM4RJmZ5DZVw |
| Al Vogel | https://app.companycam.com/embed/projects/8DVoZaojnbaxKFpf |
| Duane Coad | https://app.companycam.com/embed/projects/ikhkZ3WKmVY8cJcT |
| Lou Traficante | https://app.companycam.com/embed/projects/HemL5XnH791fMt3Q |
| Bob Zupp | https://app.companycam.com/embed/projects/i6N8EvkKZ1WfqzVP |
| Ruth Cavin | https://app.companycam.com/projects/32723014/photos |

| | |
|---|---|
| Robert Edgington | https://app.companycam.com/embed/projects/btPjeuE63ujGxqSr |
| Bob Campabello | https://app.companycam.com/embed/projects/b3bxwdbfQJfEXxyu |
| Gordon Connell | https://app.companycam.com/embed/projects/7zoTDdCVumHHTWvu |
| Diane Corbin | https://app.companycam.com/embed/projects/L2WWs6xDS57sgvWs |
| Keith Blevins | https://app.companycam.com/projects/32795749/photos |
| David Kajdi | https://app.companycam.com/embed/projects/SRDJChfvXRnjBHzJ |
| Austin Evert | https://app.companycam.com/embed/projects/KetP9hYDh7iw1TKn |
| Mary Beth McFadden | https://app.companycam.com/embed/projects/smoyrGB7wtaikin2 |
| GAYATRI TYALAVARTHI | https://app.companycam.com/embed/projects/S7TKxp1RZTr4aVst |
| Oscar Groomes | https://app.companycam.com/embed/projects/tcjkDSfHzb1f45G8 |
| John Albricht | https://app.companycam.com/embed/projects/hePDmiCvk3ubPThj |
| Jim Coley | https://app.companycam.com/embed/projects/FCXzyyn5zKj14UPM |
| Rhonda Rose | https://app.companycam.com/embed/projects/WDcgPHGrx3AW111m |
| John Cox | https://app.companycam.com/embed/projects/stPnESdcDQthUxjd |
| Tom Stevens (BLAST) | https://app.companycam.com/embed/projects/V9fSjq6En1k9BtSb |
| Matthew Skiba | https://app.companycam.com/embed/projects/5oWuh2krHSjah89E |
| Kristen Pompilio | https://app.companycam.com/embed/projects/MGnMDcfe28T1Bj3j |
| David Turner | https://app.companycam.com/embed/projects/XwZbgKdinDVXLvnz |
| Marlyn Lewis | https://app.companycam.com/embed/projects/zh1VBshidefGyu61 |
| Brad & Emily Wiedner | https://app.companycam.com/embed/projects/vNqA4VCEwD9hSdjD |
| Todd Lautzenheiser | https://app.companycam.com/embed/projects/Aximv8UUsxBrmztm |
| David DeVane (BLAST) | https://app.companycam.com/embed/projects/QpQdo3gRDmweQ5Xo |
| Chemise Watson | https://app.companycam.com/embed/projects/pBvwvJwKuzRyQhff |
| Cindy Dahlman | https://app.companycam.com/embed/projects/gd1TJSqsEWQFJq6w |
| Alton Chasin | https://app.companycam.com/embed/projects/jdjsZfC1mn7nKiaK |
| Lenna Gray | https://app.companycam.com/projects/35185285/photos |
| Mom Kwark | https://app.companycam.com/projects/37412940 |
| Diane Band | https://app.companycam.com/embed/projects/xRuqmzqds9p3kZJF |
| Sue Rufa | https://app.companycam.com/embed/projects/gFAQS3foV35xM8B2 |
| Travis Wigg | https://app.companycam.com/embed/projects/WMHdJcGqJifyU5iQ |
| David Terrell | https://app.companycam.com/embed/projects/3xkTkbUZX4jYttw5 |
| Brian Emmett | https://app.companycam.com/embed/projects/RuuYL2osPMDf4pk8 |
| Anne Ross | https://app.companycam.com/embed/projects/iWGqV4NQKYMMepTK |
| Donna Bardua | https://app.companycam.com/embed/projects/7NGUkZPkxBgBcCh1 |
| jason tarbell | https://app.companycam.com/embed/projects/znK6ywC7VKVC82Rh |
| Robert Sioss | https://app.companycam.com/embed/projects/ShhvXoWHd8FdCMgv |
| Bobby Smith | https://app.companycam.com/embed/projects/tHfTT6QUUJHLThGT |
| Randy Nelsen | https://app.companycam.com/embed/projects/1EADf247XabXMGuS |
| Marvin Kerl | https://app.companycam.com/embed/projects/wBtJyLAqPX3egvVq |
| Sharon Sharpe | https://app.companycam.com/embed/projects/Saha2Y2TZ1KCLK3x |
| Denyel Garland | https://app.companycam.com/embed/projects/rWBRTPsJkPkDN7yR |
| Carmine Dalto | https://app.companycam.com/embed/projects/bTWFHvyvwVR8N397 |
| Lisa Motruk | https://app.companycam.com/embed/projects/iVjFAx3AigGbRpbN |
| William Blaine | https://app.companycam.com/embed/projects/JaG7fdAZa99QqLhu |
| Jeff Kudlacz | https://app.companycam.com/embed/projects/nRGxRH8QhrwWvwWE |
| Ashlie Hanley | https://app.companycam.com/embed/projects/Jzhq5rEMMyg69V8P |
| Jason Tomlinson | https://app.companycam.com/embed/projects/EmfgrbpXeSTHS3Uq |
| Laurie Cothran | https://app.companycam.com/embed/projects/w9ar8mMH2nREc8yG |
| Mitchell Mahony | https://app.companycam.com/embed/projects/JphznfJuYyQ5NxT2 |
| Debbie Weston | https://app.companycam.com/embed/projects/rngP1ZpyCrV5hTfMp |
| Gerry Mello | https://app.companycam.com/embed/projects/J9f14vbJJZ6k8hKp |
| Mary Cunningham | https://app.companycam.com/embed/projects/NuFvJY9rty64uQMx |
| Suzanne & James Felsberg | https://app.companycam.com/embed/projects/iMjLbkVrU7a9SbLR |
| Megan Tajlili (BLAST) | https://app.companycam.com/embed/projects/RsbPudPDpVuZ7feR |
| David Frazell | https://app.companycam.com/embed/projects/ihG3cA2Ngo9DRHZT |
| Barbara Vieni (BLAST) | https://app.companycam.com/embed/projects/MWingBQxFoeg49s8 |
| Jason Roberson (BLAST) | https://app.companycam.com/embed/projects/8eeEPbdnUyWEDHor |

3

| | |
|---|---|
| Katie Cipkala | https://app.companycam.com/embed/projects/URosH7FhoQU9jgQm |
| Sharan Boone | https://app.companycam.com/embed/projects/tfkAPpEX9zUDUzeB |
| Alise Baer (BLAST) | https://app.companycam.com/embed/projects/dGssqjk4eRVc4KWQ |
| Tara Nelson | https://app.companycam.com/embed/projects/BL4Utqrmkioed C85 |
| John Whipkey | https://app.companycam.com/embed/projects/LJ9jnCaiPWo7C14i |
| Bob Jasion | https://app.companycam.com/embed/projects/YygHYkpZEStLB35x |
| Judy Palmer | https://app.companycam.com/embed/projects/EAZ8NDcVb7hkMac6 |
| Denise Barefoot | https://app.companycam.com/embed/projects/m887cthDut8WfY5e |
| John & Roslyn Mitchell | https://app.companycam.com/embed/projects/Xrh5VhZvWdzJSJKj |
| Alonzo Roberts | https://app.companycam.com/embed/projects/2m6KynXQARnj3DTX |
| Sarah Bartlett | https://app.companycam.com/embed/projects/qvNsEQrKoEBZ435g |
| Lori Dreyer | https://app.companycam.com/embed/projects/JmpDV1ow45WmPx3c |
| Bob Charlton | https://app.companycam.com/embed/projects/cgntvCzEzQZ9QxVi |
| Tara Hagen | https://app.companycam.com/embed/projects/17AT1PABZ5KvaKv5 |
| Michael Degumba | https://app.companycam.com/embed/projects/NmoybmNESCGs9pYC |
| Terri & Peter Stewart | https://app.companycam.com/embed/projects/EonyV2bDnTFDqktU |
| Steve Duggins | https://app.companycam.com/embed/projects/p1TEK4S6NJiD7s8H |
| Tim Niles | https://app.companycam.com/embed/projects/iuvmYWwSnBeepq4r |
| Bert Rosado | https://app.companycam.com/embed/projects/KTBvrE6VUbDbhdFC |
| Kyle Garrett | https://app.companycam.com/embed/projects/rYUm3M8h5WrwRdXp |
| Meryl Murphy | https://app.companycam.com/embed/projects/bcN9ZJv1zjtsABbK |
| Andrew Disque | https://app.companycam.com/embed/projects/Kuv3KmHSdCbAHnhX |
| Bill Bradley | https://app.companycam.com/embed/projects/r67YonQBPwKz5Pro |
| Alan Estergomy | https://app.companycam.com/embed/projects/NedFS4tSA8osY7rD |
| Bob Thiele | https://app.companycam.com/embed/projects/qXcHHJtDhXuw6knD |
| Shane Griffin | https://app.companycam.com/embed/projects/J9gfrqpHKkKwfPid |
| Angela Palmer | https://app.companycam.com/embed/projects/6e4iLF8xceK9hZUA |
| Eleanor Hedrick | https://app.companycam.com/embed/projects/m6JtVqGcmxMQVEAU |
| Donald Butler | https://app.companycam.com/embed/projects/E642QFwZEYiWWnrD |

4