IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

EVER-SEAL, INC.,              )
                                     )
      Plaintiff,          )     NO. 3:22-cv-00365
                                     )
v.                              )     JUDGE RICHARDSON
                                     )
DURASEAL, INC.,          )
                                     )
      Defendant.     )

## MEMORANDUM OPINION

Pending before the Court is Defendant DuraSeal, Inc.'s Motion to Dismiss for Lack of Jurisdiction and, In the Alternative, to Transfer Venue (Doc. No. 41, "Motion"), filed with a supporting memorandum (Doc. No. 42). Plaintiff responded. (Doc. No. 53). Defendant replied. (Doc. No. 57). Via the Motion and supporting memorandum, Defendant asks the Court to "dismiss this case for lack of jurisdiction or transfer this case to the U.S. Bankruptcy Court for the Eastern District of North Carolina." (Doc. No. 42 at 24).

## BACKGROUND

A. Procedural background

On January 14, 2022, Stephen Bradley Halferty ("Halferty") filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code in the Eastern District of North Carolina. On February 8, 2022, Plaintiff Ever-Seal, Inc. ("Plaintiff" or "Ever-Seal") sued Halferty in this Court for breach of contract, breach of fiduciary duty, and intentional interference with business relations. (Case No. 3:22-cv-00082). The Court granted a Temporary Restraining Order ("TRO") (Doc. No. 18) prohibiting Halferty from engaging in conduct that competes against Plaintiff in alleged violation of a non-compete and confidentiality agreement Halferty signed while employed

by Plaintiff. The Court subsequently stayed that case pursuant to 11 U.S.C. § 362(a) due to the pending bankruptcy proceedings. (Doc. No. 22 in Case No. 3:22-cv-00082).

Then, on May 18, 2022, Plaintiff brought the present case against Defendant DuraSeal, Inc. (an S-corporation). (Doc. No. 1). The Court granted a TRO that ordered Defendant DuraSeal, Inc. to cease "competing on projects directly with Ever-Seal," "using marketing materials derived from the ones used by Ever-Seal," "using the same products and vendors as Ever-Seal, including but not limited to Seal-It," and "representing to prospective customers that DuraSeal is an authorized distributor or authorized applicator of Seal-It, or that it has a 25-year manufacturer backed warranty from Seal[-]It." (Doc. No. 19). The Court then converted the TRO into a preliminary injunction that prohibits Defendant from engaging in the same conduct prohibited by the TRO, and additionally bars Defendant from "soliciting, hiring, contracting, or working with" or "using the services of" any former Ever-Seal employees, independent contractors, or individuals trained at Ever-Seal in the past two years. (Doc. No. 34).

Plaintiff filed an Amended Complaint. (Doc. No. 39). In the Amended Complaint, Plaintiff brings three claims: 1) inducement of breach of contract as to former Ever-Seal employee Kevin Goggins ("Goggins"), 2) inducement of breach of contract as to former Ever-Seal employee Tim Lucero ("Lucero"), and 3) intentional interference with business relations (*i.e.*, a claim that DuraSeal, Inc. "maliciously and intentionally induced Ever-Seal's prospective customers not to enter into contracts with Ever-Seal" and did so "for DuraSeal[, Inc.]'s own benefit."). (Doc. No. 39 at 27–28).

Additionally, upon motion of Plaintiff (Doc. No. 36), the Court then issued an order to show cause regarding Defendant's alleged violation of the TRO and preliminary injunction. (Doc.

No. 40). Since then, the present Motion has been filed, and briefing has been completed on the show-cause order (Doc. Nos. 41, 45, 50, 56, 58).

B. Factual background[1]

In its May 26, 2022 Memorandum Opinion and Order granting the TRO (Doc. No. 15), the Court set forth the full (alleged) factual background of this matter. Plaintiff is a Tennessee corporation that "provides wood and concrete restoration and permanent sealing services to individuals and businesses throughout the Southeastern United States" using a "one-time sealant solution called 'Seal-It.'" (Doc. No. 39 at ¶¶ 14-15, 27). Only five companies in the United States are authorized to offer and install Seal-It. (*Id.* at ¶ 28).

Halferty was employed by Plaintiff from approximately May 2020 to November 2021. (*Id.* at ¶ 20). Halferty was initially hired as an estimator for Plaintiff. (*Id.* at ¶ 31). Plaintiff promoted Halferty to the position of sales manager in 2020, when Halferty became responsible for "assisting sales representatives in each Ever-Seal market area at the direction of Ever-Seal management and per Ever-Seal standards, in addition to overseeing his assigned territory in Raleigh, North Carolina[.]" (*Id.* at ¶¶ 39-40). Plaintiff terminated Halferty's employment in November 2021. (*Id.* at ¶ 57).

In conjunction with beginning his employment with Plaintiff, Halferty signed a Confidentiality Agreement (Doc. No. 1-1) that included a so-called non-competition ("non-compete") clause prohibiting Halferty from competing against Plaintiff for two years following his termination from the company. (*Id.* at ¶¶ 48-54). Plaintiff learned in approximately December

---

[1] This "background section" describes both relevant *facts* and relevant factual *disputes*. The facts stated in this section are taken from the Amended Complaint (Doc. No. 39) and any uncontroverted statements from affidavits attached to the briefing on the Motion. These facts are accepted as true for purposes of the Motion. The Court discusses in more detail below the basis for assuming the truth of these facts for purposes of the Motion.

2021 or January 2022 that prior to his termination (specifically, in June 2021), Halferty formed a company called DuraSeal that (just like Plaintiff) provides permanent sealing services for wood and concrete in (at least) North Carolina and South Carolina and uses Seal-It. (*Id.* at ¶¶ 60-63). Halferty kept DuraSeal's creation and existence a secret from Plaintiff. (*Id.* at ¶ 113).

The parties dispute whether DuraSeal was operated as a sole proprietorship or as a corporation. It is undisputed that in the summer of 2021, Halferty formed "DuraSeal, Inc."—a Delaware corporation with its principal place of business in North Carolina. However, Defendant alleges that "DuraSeal, Inc." never actually did any business. Defendant supports this allegation with the declaration of Halferty (Doc. No. 43-1).[2] Halferty therein states that all relevant business was actually operated through Halferty's sole proprietorship, "DuraSeal." (*Id.* at ¶ 6). Halferty states that "DuraSeal, Inc." is nothing more than "an empty, corporate shell that has never conducted any business." (*Id.* at ¶ 7).

Plaintiff's position is that "DuraSeal, Inc." and "DuraSeal" are one and the same and that Halferty operated its competing business (called "DuraSeal") through DuraSeal, Inc. (the corporation). (Doc. No. 53 at 10–13). In support of this position, Plaintiff cites evidence outside of the Complaint. First, Plaintiff discusses Halferty's bankruptcy filings. In the "Voluntary Petition for Individuals Filing for Bankruptcy" ("Bankruptcy Petition"), signed by Halferty on January 14, 2022, Halferty answers "no" to the question, "Are you a sole proprietor of any full- or part-time

---

[2] Plaintiff makes the argument that the Court should reject everything in Halferty's declaration because it is "self-serving and suspect." (Doc. No. 53 at 11). The Court will not go that far. True, the Court cannot weigh the controverting assertions of the party seeking dismissal for lack of jurisdiction, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). But Halferty's affidavit does more than just deny jurisdictional facts; it presents a set of plausible alternative facts. Thus while the Court cannot accept as true a statement in the declaration unless it is uncontroverted, the Court will not reject everything in the affidavit simply on the grounds that it is "self-serving and suspect."

business?" (Doc. No. 46-3 at 4). In the Bankruptcy Petition, Halferty also denies having used (himself) any trade names or "doing business as" names in the last eight years. (*Id*. at 3). Halferty's own responses here thus suggest that Halferty did *not* operate Duraseal as a sole proprietorship.

But elsewhere in the Bankruptcy Petition, Halferty seemingly contradicts this suggestion. He answered yes to the question, "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business? Then, via check marks, he represented that he has been "connect[ed] to a[ ] business specifically in the sense of having been: (1) "A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time" and identifies two relevant businesses"; and (2) "[a]n owner of at least 5% of the voting or equity securities of a corporation." (*Id*. at 42-43). Then, when asked to "fill in the details . . . for each business," Halferty listed: 1) "Duraseal" (with the EIN 87-1600697 and "dates business existed" as August 2021–present); and 2) First Aid Painting, Inc. (with the EIN 56-1966711 and "dates business existed" as 1996–2020).

The Court has considered whether these various answers can be reconciled by a scenario in which Halferty is no longer a sole proprietor (consistent with his first answer discussed above) but was a sole proprietor at some point within the last four years (consistent with the remaining answers discussed above). If that were so, however, the (now-former) sole proprietorship would had to have been "Duraseal" and not First Aid Painting, Inc., which is specifically identified as a corporation as opposed to a sole proprietorship. And this reality blows up the Court's proposed reconciling scenario because Halferty lists "Duraseal"'s dates of existence as "August 2021–present"—meaning that the sole proprietorship (DuraSeal) was still in existence when Halferty completed the Bankruptcy Petition. This conflicts with Halferty's earlier representation in the Bankruptcy Petition that he was not as of that time presently operating any sole proprietorship. So

upon minute examination, the answers actually cannot be reconciled, but instead give two conflicting representations as to whether Halferty was operating a sole proprietorship at of the time of the completion of the Bankruptcy Petition. Because, as discussed below, factual conflicts are resolved in Plaintiff's favor at this stage, the Bankruptcy Petition supports a finding that Halferty was not operating a sole proprietorship when he completed the Bankruptcy Petition.

Lending further support to this position is Halferty's testimony from the bankruptcy hearing, at which the following exchange occurred:

> Q:     Is DuraSeal -- do you operate as a sole proprietor?
>
> A:      It is -- I believe it's an [s-corp]. I'd have to find the filing.

(Doc. No. 51-1 at 3).[3] This dialog does not explicitly establish that Halferty actually *operated DuraSeal* through "DuraSeal Inc." (rather than as a sole proprietorship); the actual question pending when Halferty gave his answer is whether "you"—which is properly taken to mean *Halferty individually*—operate as a sole proprietorship, and as stated, the question was *not* whether "DuraSeal" operates as a sole proprietorship. Halferty did not answer the question asked.  Instead, he went back to provide information on the term ("DuraSeal") used in the immediately preceding, uncompleted question, and noted that "it" is an S-corp, (as opposed to a sole proprietorship). One cannot *with absolutely certainty* take this answer to intend to convey that "DuraSeal" operated as [s-corp] DuraSeal, Inc., rather than as Halferty's sole proprietorship. But when this testimony is viewed in Plaintiff's favor as required, it suggests that (according to Halferty himself), he conducted the business of "DuraSeal" through DuraSeal, Inc. (an s-corp).[4]

---

[3] The official transcript shows the word in brackets as "escort." In context, though, it is clear that the actual term spoken was "s-corp."

[4] Plaintiff also states in its Response that "records produced in the bankruptcy case show that Halferty ordered the Seal-It product using DuraSeal, Inc.'s EIN (87-1600697)." (Doc. 51-3). In those

Plaintiff also includes in its Response a link to the website that would have shown if Halferty had registered as a "d/b/a" to operate legally in North Carolina, and that website does not reveal any sole proprietorship under the name Duraseal. (Doc. No. 53 at 12–13 ("The North Carolina Secretary of State shows no assumed business name is on file related to Halferty or DuraSeal. See https://www.sosnc.gov/online_services/assumed_name/search/id. [. . .] North Carolina law requires parties operating under an assumed name to file an Assumed Business Name Certificate in the register of deeds of the county in which the person will engage in business before engaging in business under an assumed business name. N.C. Gen. Stat. § 66-71.4.")).[5] So Plaintiff has pointed to information suggesting strongly (indeed conclusively, but for the consideration that perhaps the webpage somehow erroneously omitted a registration by Halferty), that Halferty has not been *lawfully* conducting business as a sole proprietor under the trade name "DuraSeal." And if he is not doing so lawfully, it is inferable that he is not doing so at all.[6]

As the Court details in the Legal Standard section below, factual disputes are resolved in the plaintiff's favor on a 12(b)(2) motion if the plaintiff has submitted evidence to support its version of the facts. Thus, for purposes of resolving the Motion, Halferty will be treated as not

---

communications with Seal-It manufacturer, Halferty used the email address sales@durasealit.com, which is the same email address used with customers. (Doc. 51-4; Doc. 38-1). It is also associated with the DuraSeal website name. (Doc. 38-3)." (Doc. No. 53 at 13). It is not clear from the cited documents that the email address "sales@durasealit.com" belongs to DuraSeal, Inc. rather than DuraSeal (the alleged sole proprietorship), or that EIN 87-1600697 belongs to DuraSeal Inc. rather than Duraseal. The website attachment also does not include any indication that it relates to DuraSeal, Inc. Thus, the Court will not consider these allegations.

[5] The Court may consider this information at the motion-to-dismiss stage because it concerns public records of official government action and thus is subject to judicial notice by the Court. *See Roane Cty., Tennessee v. Jacobs Eng'g Grp., Inc.*, No. 3:19-CV-206-TAV-HBG, 2020 WL 2025613, at *3 (E.D. Tenn. Apr. 27, 2020) ("the Court may take judicial notice of public records and government documents available from reliable sources on the Internet.").

[6] It would seem that Halferty would have an incentive not to challenge the reasonableness of this inference, unless he wishes to assert that it is not reasonable to at least presume that he would act only lawfully.

doing business in the name of "Duraseal" as a sole proprietorship.[7] That being said, the Court cannot collapse the distinction between these two entities for all intents and purposes. In particular, the Court cannot consider the acts of "Duraseal" prior to the incorporation (i.e., the existence) of DuraSeal, Inc. to be the acts of DuraSeal, Inc. For starters, it is axiomatic that generally, an agent cannot act on behalf of a non-existent principal. And to state the obvious, DuraSeal, Inc. did not exist prior to its incorporation. So anyone acting on behalf of "DuraSeal" prior to DuraSeal, Inc.'s incorporation generally could not possibly have been acting as an agent of DuraSeal, Inc. At least conceivably, there could be an applicable exception to this rule, such that the pre-incorporation acts of "Duraseal" would be considered the acts of DuraSeal, Inc. for purposes of viewing jurisdictional contacts. But if Plaintiff seeks the application of such an exception (which it does), it must convince the Court, with evidence and argument,[8] that such exception applies. Plaintiff has failed to do so.

In support of the application of an exception, Plaintiff does nothing more than cite a 1973 case from the District of Delaware and argue that "[i]t is well-settled law that certain pre-corporation conduct, done for the benefit of the future corporation and to which the established

---

[7] The Court makes clear that in so concluding, it does not rely on any unsupported (bare) allegations in the Complaint regarding the facts in dispute. Additionally, the Court notes that it does not even reach the question herein of whether DuraSeal, Inc. is an alter ego for Halferty (because that is not the question before the Court). And even if the Court were to reach a conclusion on that issue, it would not change the fact that at this stage, factual disputes are resolved in Plaintiff's favor if Plaintiff submits evidence to support its view of disputed facts.

[8] When discussing the applicability of pre-incorporation acts to the personal jurisdiction analysis, Plaintiff states, "at this stage of the proceeding, Ever-Seal is not required to prove the merits of its case to simply defend its basis for personal jurisdiction." (Doc. No. 53 at 16 n.10). While it is true that when ruling on a motion to dismiss, factual disputes are resolved in the plaintiff's favor and the pleadings and affidavits are considered in a light most favorable to the plaintiff, the plaintiff still may not rest on the bare allegations of the complaint [except to the extent that those allegations clearly are undisputed]. *Ramsey v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017). Similarly, Plaintiff cannot rely on a bare claim that pre-incorporation acts (of Halferty or anyone else acting in the name of "DuraSeal") should be imputed to DuraSeal, Inc.

corporation receives the benefit from, may be considered acts of the corporation." (Doc. No. 53 at 15–16). But this District of Delaware case cited by Plaintiff does not involve a question of personal jurisdiction, and is otherwise unhelpful to resolving the present Motion. Plaintiff has not presented any other evidence or argument that suggests that the Sixth Circuit even recognizes such an exception, let alone that it is "well-settled law" or that any exception, if it did exist, would even apply to the particular facts of this case.[9]

Thus, the Court herein will hold Plaintiff to its choice to sue DuraSeal, Inc. as a distinct entity separate and apart from Halferty (including and especially Halferty in his capacity as a sole proprietor doing business as Duraseal). After all, given the automatic stay preventing any lawsuit against Halferty, Plaintiff's choice of suing DuraSeal, Inc. is lawful only to the extent that DuraSeal, Inc. is distinguishable from Halferty. Having made this choice, Plaintiff cannot "have it both ways"—*i.e.,* have this Court consider DuraSeal, Inc. and Duraseal to be the same for purposes of the personal jurisdiction analysis, yet separate for purposes of bringing this lawsuit against DuraSeal, Inc. as a separate entity. In other words, if Plaintiff can bring this separate lawsuit despite the automatic stay because DuraSeal, Inc. is distinguishable from Halferty d/b/a Duraseal, then

---

[9] True, some courts have recognized that certain pre-incorporation actions can be considered when assessing jurisdictional contacts. As one court explained, "[w]hile the caselaw is 'sparse' on the effect of pre-incorporation promoter contacts on personal jurisdiction of a corporation, the cases that have addressed the question 'stand for the proposition that pre-incorporation activities of promoters that are later ratified by the corporation may be considered in evaluating personal jurisdiction.'" *Dev. Design Grp., Inc. v. Deller*, 2012 WL 1098603, at *18 (D. Md. Mar. 30, 2012) (*citing Burlington Indus., Inc. v. Yanoor Corp.*, 178 F.Supp.2d 562, 568 (M.D.N.C. 2001) and adopting the definition of promoter as "those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter" (citation omitted)). But these cases do not help Plaintiff here. First, the Court is not aware of any Sixth Circuit case law that discusses this principle or renders it applicable in this Court. Second, even if it were applicable, Plaintiff has not argued that Halferty acted as a "promoter" such that this exception would be applicable (or that there is some other similar exception that exists for the acts of persons who do not qualify as a "promoter"). And third, even if Plaintiff had made such a showing, Plaintiff has not demonstrated that DuraSeal, Inc. (*i.e.,* the corporation that Plaintiff, seeking to get around the automatic stay, insists has an existence separate from Halferty's) "ratified" the pre-incorporation acts of Halferty d/b/a Duraseal. Thus, the Court declines to apply this exception when ruling on the Motion.

Plaintiff must demonstrate why the Court should disregard this distinction when applying any legal principles (such as this alleged pre-incorporation acts exception) when conducting the personal jurisdiction analysis. Because Plaintiff has failed to do so, as described above, the Court will not consider any acts taken by Halferty d/b/a Duraseal prior to DuraSeal, Inc.'s incorporation to be the acts of DuraSeal, Inc. for purposes of resolving the Motion.

Halferty applied for incorporation in June or July 2021, and incorporation was complete "on or around" August 31, 2021.[10] (Doc. No. 51-2 at 4–5, Doc. No. 43-1 at ¶ 2). Plaintiff does not dispute August 31, 2021 as being the date DuraSeal, Inc. was incorporated. (Doc. No. 53 at 16 (referring to this date as the time of "Defendant's alleged completed incorporation")). Thus, three facts/events relied on by Plaintiff occurred prior to DuraSeal, Inc.'s incorporation: 1) Halferty purchasing chemicals from a supplier (the same supplier from which Plaintiff purchases its chemicals) in Nashville, Tennessee on August 16, 2021 for Duraseal's business use (Doc. No. 43-1 at ¶ 42; Doc. No. 53 at 16); 2) Halferty recruiting and hiring former Tennessee-based Ever-Seal employee Goggins in May 2021 (Doc. No. 39 at ¶¶ 78–79); and 3) Halferty receiving training from Plaintiff in Tennessee, including a week of appointments in Nashville.[11] (Doc. No. 39 at ¶ 23).

---

[10] The deposition testimony indicates that DuraSeal, Inc. was incorporated in June or July *2020*, but the parties appear to agree that these events actually occurred in *2021*. (Doc. No. 53 at 16, Doc. No. 42 at 5, 12).

[11] Defendant denies that Halferty ever attended any training in Tennessee (Doc. No. 57 at 2), but even if this factual dispute is resolved in Plaintiff's favor, it cannot be considered by the Court. Plaintiff does not allege a particular set of dates when this training occurred, and it certainly could have occurred prior to DuraSeal, Inc.'s incorporation. As Defendant notes, "Plaintiff offers no specific facts concerning the substance or date of the alleged training, which could have predated Defendant's incorporation by a year." (*Id.*).

In October 2021, following DuraSeal, Inc.'s incorporation, Halferty recruited and hired former Kentucky-based Ever-Seal employee Lucero.[12] (Doc. No. 39 at ¶¶ 96–98). Both Lucero and Goggins signed a Confidentiality Agreement containing a non-competition clause and a Tennessee forum selection clause at the commencement of their employment with Plaintiff. (Doc. No. 39 at 49–53, 74–75, 93–94).

## LEGAL STANDARD

### A. Standard of Review: Personal Jurisdiction

Defendant (meaning, again, DuraSeal, Inc.) filed its motion pursuant to Fed. R. Civ. P. 12(b)(2), which provides for dismissal of a claim for "lack of personal jurisdiction." A plaintiff bears the burden of establishing personal jurisdiction. *Elcan v. FP Assocs. LTD*, Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020). On a 12(b)(2) motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing.[13] *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the court rules without conducting an evidentiary hearing, [14] the plaintiff's burden of proof is "relatively slight." *Id.* (citing *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017)).

Nevertheless, ""[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Ramsey*

---

[12] Though Defendant discusses Lucero in the Motion, Plaintiff does not appear to base its argument for personal jurisdiction on the recruitment and hiring of Lucero (as opposed to Goggins, and only Goggins). (See Doc. No. 53 at 15–19 (discussing only Goggins when arguing that Defendant purposefully availed itself of doing business in Tennessee)).

[13] Experience shows that courts sometimes do two of these three things, namely, permit discovery on the issue and then either decide the motion on written submissions alone or conduct an evidentiary hearing.

[14] The parties request that the Court rule on the Motion without an evidentiary hearing. (Doc. No. 53 at 8).

*v. Greenbush Logistics, Inc.*, 263 F. Supp. 3d 672, 676 (M.D. Tenn. 2017) (quoting *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012)). "In other words, a 'plaintiff may not simply rest on the bare allegations of the complaint. But uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 583 (S.D. Ohio 2016) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)).

Moreover, when a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Elcan*, 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation and quotation marks omitted), cited in *Elcan*, 2020 WL 2769993, at *3. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.* "In this procedural posture [without an evidentiary hearing], the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions." *Camps v. Gore Capital, LLC*, No. 3:17-cv-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019).

It is not necessarily easy to reconcile all of the above-referenced rules with one another, because, at least superficially, they could be understood to say different things about the extent to which the district court must accept as true the allegations of the complaint. But the Court believes that they can be reconciled. And the upshot seems to be this: in opposing a motion to dismiss for

lack of personal jurisdiction, a plaintiff cannot rely on mere allegations in the complaint, unless they are uncontroverted by the defendant-movant—in which case they can be accepted as true, as can the averments in the plaintiff's declarations or attachments thereto (even if contradicted) and the defendant's undisputed factual assertions.

Because, in the Court's discretion, there has been no evidentiary hearing with regard to Defendant's Motion, the Court will determine whether Plaintiff has demonstrated this Court's personal jurisdiction over Defendant under a *prima facie* standard, rather than the heavier preponderance of the evidence standard. *Camps*, 2019 WL 2763902, at **4-5. "'A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction.'" *Reyes v. Freedom Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480, at *2 (N.D. Ohio Apr. 6, 2020) (quoting *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148, at *2 (W.D. Wash. Dec. 13, 2018)).

In a diversity case such as this one, a plaintiff must satisfy the state-law requirements for personal jurisdiction. *Camps*, 2019 WL 2763902, at *5; *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at *1 (M.D. Tenn. Feb. 13, 2017) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."), *aff'd sub nom. Bulso v. O'Shea*, 730 F. App'x 347 (6th Cir. 2018). Tennessee law (its so-called "long-arm" statute) authorizes its courts to exercise jurisdiction over persons on "any basis not inconsistent with the constitution of this state or of the United States." *Bulso*, 2017 WL 563940, at *1(citing Tenn. Code Ann. § 20-2-214(a)(6)). Therefore, the Court must decide whether the exercise of jurisdiction comports with the limits imposed by federal due process, without having to decide separately whether Tennessee law authorizes the exercise of jurisdiction. *Id.*; *see also Camps*, 2019 WL 2763902, at *5 ("In other

words, the jurisdictional limits of Tennessee law and federal constitutional due process are identical, and the two inquiries are merged.").

B. <u>Specific Jurisdiction</u>

Personal jurisdiction comes in two forms: general and specific. *Tailgate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019). Plaintiff does not assert that the Court has general jurisdiction[15] over Defendant. (Doc. No. 32).[16] Rather, Plaintiff alleges that the Court has specific jurisdiction over Defendant.

Specific jurisdiction must arise out of or relate to the *defendant's* contacts with the forum—principally an activity or occurrence that takes place in the forum state. *Tailgate Beer*, 2019 WL 2366948, at *2. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum. *EnhanceWorks, Inc. v. Dropbox, Inc.*, No. M2018-01227-COA-R3-CV, 2019 WL 1220903, at *6 (Tenn. Ct. App. Mar. 14, 2019) (citing *Walden v. Fiore*, 571 U.S. 277, 294 (2014)). "Specific jurisdiction requires us to focus on the 'affiliation between the forum and the underlying controversy.'" *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The question is whether "the defendant's actions connect

---

[15] "General jurisdiction" requires that a plaintiff have continuous and systematic contacts with the state. *Tailgate Beer*, 2019 WL 2366948, at *2. In its Response Plaintiff makes clear that it does not claim that general jurisdiction is present. (Doc. No. 53 at 13 ("In this case, Ever-Seal does not allege general personal jurisdiction or that Defendant's contacts with Tennessee are so continuous or systematic that Defendant could be considered 'at home' in Tennessee.")).

[16] Notably, based on a discernible trend in the law over the last few decades, "it is clear that [a defendant]'s designation of an agent for service of process, standing alone, does not constitute consent to the general jurisdiction of this state[.]" *W. Express, Inc. v. Villanueva*, No. 3:17-CV-01006, 2017 WL 4785831, at *7 (M.D. Tenn. Oct. 24, 2017).

him to the forum," and thus the analytical focus should not be on the plaintiff's contacts with the defendant and forum. *Walden*, 571 U.S. at 289.

The Court has specific jurisdiction over Defendant if Plaintiff shows that: (1) Defendant purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee; (2) the causes of action herein arise from or relate to Defendant's activities in Tennessee; and (3) Defendant's action in Tennessee or the consequences caused by its actions directed towards Tennessee are substantial enough to make the exercise of personal jurisdiction over it reasonable. *Tailgate Beer*, 2019 WL 2366948, at *2; *Winston v. Zaehringer*, No. 1:19-CV-216, 2020 WL 3259531, at *6 (E.D. Tenn. June 16, 2020).

### 1. *Purposeful availment*

Purposeful availment is the "constitutional touchstone"[17] of personal jurisdiction. *Winston*, 2020 WL 3259531, at *6 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum. *Tailgate Beer*, 2019 WL 2366948, at *4. The purposeful availment prong of the test asks whether the defendant acted or caused a consequence in Tennessee such that it "invoked the benefits and protections" of Tennessee law and, thus, could have reasonably anticipated being brought into court there. *Elcan*, 2020 WL 2769993, at *4. A defendant should not be brought to court in a particular forum solely as a result of random, fortuitous, or attenuated contacts with that forum. *Id.*

A court can have jurisdiction over a defendant even if the defendant has few contacts with the forum, but the defendant must have done something to create a contact with the forum.

---

[17] The Court realizes that this metaphor is too vague to be very instructive; all the Court really can derive from it is that it means that "purposeful availment" is very important to personal jurisdiction—a truism already apparent from the above-stated fact that a defendant's "purposeful availment" is required for that defendant to be subject to personal jurisdiction.

*Winston*, 2020 WL 3259531, at *7. A plaintiff cannot rely on his or her own contacts with the forum to justify jurisdiction over the defendant. *Id.* Thus, the defendant's relationship with the forum state must arise out of contacts that the defendant himself created; the unilateral activity of the plaintiff or a third-party cannot be the basis of exercising personal jurisdiction over a defendant. *Camps*, 2019 WL 2763902, at *6.

> ### 2. *Arise out of or relate to*

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Tailgate Beer*, 2019 WL 2366948, at *5. In a recent Supreme Court opinion, the Supreme Court reiterated that specific jurisdiction attaches when a defendant cultivates a market for a product in the forum State and the product subsequently malfunctions there. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021). The Court found that the defendant was subject to specific jurisdiction because it had systematically targeted the forum states (Montana and Minnesota) for marketing the vehicles (through advertising, selling, and servicing those models in the states for many years) that injured the plaintiffs, though the particular vehicles involved in the case were not designed, manufactured, or sold in the forum states. *Id.* at 1028. The Court rejected the defendant-appellant's focus on causation and stated that the disjunctive nature of the "arise out of *or* relate to" test indicates that causation between the defendant's contacts with the forum and the cause(s) of action does not *necessarily* have to be present. *Id.* at 1026. In his concurrence, Justice Alito agreed with the majority declining to adopt the defendant's but-for characterization of the specific jurisdiction test, but he expressed concern that the majority was "recogniz[ing] a new category of cases in which personal jurisdiction is permitted: those in which the claims do not 'arise out of' (*i.e.*, are not caused by) the defendant's contacts but nevertheless sufficiently 'relate to' those

contacts in some undefined way." *Id.* at 1033. The scope of this new gloss on this prong of the test for specific jurisdiction is unclear. But in any event, this case does not require the Court to determine whether this is an instance where the claim "relates to," despite not "arising out of," Defendant's conduct in the forum state, as Plaintiff has not asserted this argument (or any argument) regarding this prong ("arise out of or relate to") of the test for specific jurisdiction.

### 3. *Reasonableness*

If a court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Tailgate Beer*, 2019 WL 2366948, at *6. The burden on the defendant to meet this prong is high. *Id.* The Sixth Circuit has stated that "[i]n determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso*, 730 F. App'x at 351.[18]

### ANALYSIS

### A. Motion to dismiss

In the Motion, Defendant argues that it does not possess sufficient minimum contacts with Tennessee to warrant the Court's exercise of specific personal jurisdiction over it. (Doc. No. 42 at

---

[18] Other courts have found five factors to be relevant in determining the reasonableness of exercising personal jurisdiction: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Tailgate Beer*, 2019 WL 2366948, at *6 (citing *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 888 (W.D. Tenn. 2017)). The undersigned questions why the constitutionality of personal jurisdiction—an issue that is at bottom about due process for defendants—should turn at all upon the last two concerns, which strike the undersigned as having little relationship to due process. In any event, following the Sixth Circuit's lead as noted above, the Court will not apply those two factors.

7). After disregarding any pre-incorporation actions relied on by Plaintiff, as discussed above, Plaintiff's sole alleged factual predicate for personal jurisdiction is that DuraSeal, Inc. is currently allegedly unlawfully competing with a business that is located in Tennessee (Plaintiff), including by continuing to employ an individual (Goggins) who allegedly violated a non-compete agreement with Plaintiff.[19] (Doc. No. 39 at ¶ 23). Plaintiff argues, "[e]ven if Goggins began working for Defendant before its incorporation, Defendant has continued to employ Goggins and receive the benefits of his employment since incorporation." (Doc. No. 53 at 18).

The fact that Defendant currently employs Goggins and allegedly currently unlawfully competes with Plaintiff does not constitute "purposeful availment" sufficient for Plaintiff to establish a *prima facie* case of personal jurisdiction. Plaintiff has not convinced the Court that the mere fact that the alleged victim business (Plaintiff) is located in Tennessee is enough to confer personal jurisdiction over the allegedly unlawfully competing business there. Nor did Plaintiff cite any law suggesting that Defendant's employment of Goggins, a *former* Tennessee Ever-Seal employee, would constitute "purposeful availment" of the privilege of acting or causing a consequence in Tennessee. Plaintiff argues only that "Defendant directed communication into Tennessee for the purpose of recruiting Goggins and inducing him to breach his agreement." (Doc. No. 53 at 19). Plaintiff did not provide any support for its allegation that Defendant directed communication into Tennessee for this purpose, and in any event any such communications would

_____

[19] If Plaintiff intended to also allege that the Court has personal jurisdiction over Defendant because DuraSeal, Inc. operates (i.e., does business or has customers) in Tennessee, it was not clear in doing so. And even if it does allege such a theory, it would fail because Plaintiff itself conceded that it lacked knowledge that Defendant does any business in Tennessee and only that Defendant "may be planning" to expand operations to Tennessee. (Doc. No. 53 at 18–19 n.12 ("Ever-Seal has no direct knowledge of Defendant's provision of services to customers in Tennessee; however, these marketing materials certainly speak to the fact that Defendant may be planning to expand its operation to Tennessee or further unfairly compete with Ever-Seal providing services in Tennessee.")).

have occurred prior to Defendant's incorporation (inasmuch as Goggins left Ever-Seal in May 2021 (Doc. No. 39 at ¶¶ 78–79)) and thus are not attributable to Defendant.

Finally, in the absence of Plaintiff providing any case law showing otherwise, the Court notes that the mere allegation of an intentional tort that has allegedly injured the resident of a certain forum does not itself necessarily establish personal jurisdiction over the alleged tortfeasor there. In *Far W. Cap., Inc. v. Towne*, the Tenth Circuit provided an overview of the law across circuits (including the Sixth Circuit) in this regard, and concluded:

> Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.

46 F.3d 1071, 1079 (10th Cir. 1995). Here, a particularized inquiry reveals no allegations of suit-related activities of DuraSeal, Inc. purposefully directed at Plaintiff or any other resident of Tennessee. *See Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 114 (6th Cir. 2005) ("Although this Circuit has long held that the minimum contacts test can be satisfied either by acting *or* the causing of a consequence in the forum state, *see Southern Mach.,* 401 F.2d at 380, we have *not* held that merely causing a consequence *always* satisfies the minimum contacts test. . . . Rather, we have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."). As noted, the Court appropriately treats DuraSeal Inc. as distinguishable from Halferty d/b/a DuraSeal. The Amended Complaint complains about Goggins being hired away from Plaintiff in *May* 2021. But this could only have been the act of Halferty d/b/a DuraSeal, not DuraSeal Inc., because DuraSeal,

Inc. did not yet exist. So "reaching into" Tennessee to hire Goggins away from Plaintiff is not an act attributable to DuraSeal, Inc.

Additionally, in *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000), the Sixth Circuit held that "fortuitous" contacts with a forum are not enough to create "continuous and substantial" consequences with the forum such that the purposeful availment requirement is met. *Id.* at 723. In particular, the Sixth Circuit discussed a scenario where a contract existed between the plaintiff, who was located in the forum state, and the defendant. *Id*. The Court found that because the defendant's contacts with the forum were merely the result of the plaintiff's choice to be reside there, rather than defendant choosing to further its business there, the defendant had only "random, fortuitous, and attenuated contacts" with the state (which are the type of contacts "that the purposeful availment requirement is meant to prevent from causing jurisdiction."). *Id. See also Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997) ("[I]t was purely fortuitous that International Technologies happened to have a Michigan address."). The Court concludes that the lessons of *Calphalon* apply beyond the particular (*i.e.*, contractual) context in which *Calphalon* was decided. And here, DuraSeal, Inc.'s contacts with Tennessee are the type described by the Sixth Circuit in *Calphalon*. Defendant's "contacts" with Tennessee, in the form of allegedly harming a business that happens to be located in that state, are not the result of Defendant choosing to do business in the state or creating "continuous and substantial" consequences there. *Id*. Thus, Defendant has not "purposefully avail[ed]" itself of acting in or causing a consequence in Tennessee. *Tailgate Beer*, 2019 WL 2366948, at *2.

For all of the aforementioned reasons, the Court finds that Plaintiff has failed to demonstrate a *prima facie* case of personal jurisdiction under Tennessee's long-arm statute.

B. Motion to transfer venue

Defendant moves, in the alternative, to transfer venue to the United States Bankruptcy Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1406(a). As the Supreme Court said about this statute a half-century ago, since which time it has remained unchanged: "Nothing in that language indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants. And we cannot agree that such a restrictive interpretation can be supported by its legislative history . . . ." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962).

So a court may transfer venue under § 1406(a) even if it lacks personal jurisdiction over a defendant. *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980) ("The law in this Circuit, therefore, is that s 1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either improper venue or lack of personal jurisdiction."); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a [federal district] court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action . . . could have been brought[.]"). Additionally, as this Court has explained,

> The Sixth Circuit appears to read *Goldlawr* and § 1631 "as creating a presumption in favor of transfer, especially when the [plaintiff] had 'some arguable basis for thinking that it appealed to the proper court.'" *Wesley Corp. v. Zoom T.V. Prods.*, 749 F. App'x 449, 450 (6th Cir. 2019) (citing *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009)). Where, however, the plaintiff has no "arguable basis for thinking that the action was properly brought in the district in which it was originally filed," dismissal rather than transfer is well within the court's discretion. *Stanifer*, 564 F.3d at 460.

*Moore v. Shanahan Eng'g, Inc.*, 2020 WL 5039443, at *8 (M.D. Tenn. Aug. 25, 2020).

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Thus, in determining whether to transfer a case under § 1406(a), the court must first determine whether venue was "wrong" as selected by the plaintiff, and then determine whether the claim "could have been brought" in the transferee district. 28 U.S.C. § 1406(a); *see also JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, 2017 WL 4512501, at *2 (M.D. Tenn. Oct. 10, 2017).

"[A] trial court without jurisdiction lacks 'all authority to hear a case.'" *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 249 (1st Cir. 2019) (quoting *United States v. Kwai Fun Wong*, ––– U.S. ––––, 135 S.Ct. 1625, 1631(2015)). Because the Court does not have jurisdiction over Defendant, it "lacks all authority" to hear this case. It would logically follow, then, that venue cannot be proper in this district. However, out of an abundance of caution, the Court undertakes the venue analysis, which also reveals that this district is an improper venue.

In the Complaint, Plaintiff alleges that venue in this district is proper "pursuant to 28 § U.S.C. 1391 because a substantial part of the events or omissions giving rise to these causes of action occurred in the Middle District of Tennessee . . . and Ever-Seal resides in the Middle District of Tennessee." (Doc. No. 39 at ¶ 24). Plaintiff makes clear in its Response that it asserts venue under 28 § U.S.C. 1391(b)(2). (Doc. No. 53 at 21).

Venue under 28 § U.S.C. 1391(b)(2) is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir. 1998). "This interpretation of § 1391(b)(2) is nonetheless limited by the section's substantiality requirement— only those acts or omissions with substantial, rather than tangential, connections to a plaintiff's claims can establish venue." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765–66 (S.D. Ohio 2014). "District

courts in the Sixth Circuit have . . . considered both the plaintiff's and defendant's activities in analyzing whether venue is proper under § 1391(b)(2)." *Reilly*, 6 F. Supp. 3d at 767. *See, e.g., Waste Mgmt., Inc. of Tennessee v. Mock*, No. 3:09-00409, 2009 WL 2038144, at *2 (M.D. Tenn. July 9, 2009) (considering the location of the plaintiff's business equipment and offices when determining that the plaintiff's claims had a substantial connection to the relevant district).

For the same reasons discussed by the Court above, the Court will consider only the post-incorporation acts of Halferty d/b/a Duraseal to be the acts of DuraSeal, Inc. for purposes of venue. However, unlike the personal jurisdiction analysis, the Court will look to the activities of both Plaintiff and Defendant to determine whether a substantial part of the events underlying Plaintiff's claims arose in the Middle District of Tennessee. *United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969) ("The concepts of personal jurisdiction and venue are closely related but nonetheless distinct."). With these principles in mind, the Court still finds that venue is not proper under § 1391(b)(2).

In support of venue, Plaintiff argues:

> Here, venue is proper in this district because substantial activities giving rise to the claims occurred in this district. Defendant purchased product in Nashville to kick-start its unlawful competition. Defendant purposefully directed communications into Tennessee to recruit Goggins, a Nashville-based contractor, and induce a breach of his agreement with Ever-Seal. Defendants [sic] is unlawfully using the information gleaned from Halferty's training in Tennessee. And, in general, this lawsuit seeks to recover for Defendant interfering with contracts entered into with a Nashville based company, improperly benefitting from that company's confidential and inside information stored on servers in Nashville, and attempting to harm a Nashville-based company.

(Doc. No. 53 at 22). Defendant's purchase of chemicals and communications with Goggins occurred pre-incorporation and cannot be considered for present purposes, as previously discussed. And any information Halferty gained through alleged trainings in Tennessee is being used not in Tennessee, but in the states in which DuraSeal, Inc. operates (of which Tennessee is not one).

Similarly, Plaintiff does not allege that any activities conducted by DuraSeal, Inc. that allegedly interfere with Plaintiff's business actually took place in Tennessee. Plaintiff cites no law demonstrating that just because Plaintiff resides and operates its business in this district and has suffered alleged harms while residing in this district, that a "substantial part of the events or omissions giving rise to the claim" occurred here for purposes of § 1391(b)(2). Thus, venue is not proper in the Middle District of Tennessee pursuant to 28 § U.S.C. 1391(b)(2).

Next, the Court must determine whether Plaintiff's claims could have been brought in the proposed transferee court. The Court finds that they could. Defendant requests transfer to the Eastern District of North Carolina. That district is proper because the undisputed facts show that DuraSeal, Inc.'s primary place of business is North Carolina. Defendant specifically requests transfer to the United States Bankruptcy Court for the Eastern District of North Carolina. In *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, No. A-07-CA-421 LY, 2007 WL 3256210 (W.D. Tex. Nov. 2, 2007), another district court described the relevant considerations for this issue:

> The difficulty with the bankruptcy court is that it would not have jurisdiction over the claims in Plaintiffs' First Amended Complaint. Bankruptcy courts are courts of limited jurisdiction and their jurisdiction is "wholly 'grounded in and limited by statute.'" *See Bass v. Denney (In re Bass),* 171 F.3d 1016,1022 (5th Cir. 1999) (quoting *Celotex Corp. v. Edwards,* 514 U.S. 300, 307 (1995)). Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate. *Celotex Corp.,* 514 U.S. at 307. The bankruptcy court's jurisdiction is divided into "core" and "non-core" proceedings. *In re Spillman Development Group, LTD,* 2007 WL 1812802, at * 3 (Bankr. W.D. Tex. June 19, 2007). Core proceedings arise under title 11 or arise in a case under title 11. *Id.* (citing 28 U.S.C. § 157(b)). "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt." *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987). Non-core proceedings are those proceedings that are otherwise related to a case under title 11. *Spillman,* 2007 WL 1812802, at * 3 (citing 28 U.S.C. § 157(c)(1)). To

determine whether a particular matter falls within this general bankruptcy jurisdiction, a court must determine whether the outcome of that proceeding could have any conceivable effect on the estate being administered in the bankruptcy proceeding. *In re Wood,* 825 F.2d at 93. . . .

Plaintiffs' lawsuit alleges breach of contract, breach of duty to disclose, breach of fiduciary duty, unjust enrichment, fraud, negligent misrepresentation, conversion, and breach of duty of good faith and fair dealing. None of the claims are made against a debtor in any bankruptcy proceeding pending in the Southern District of New York. Plaintiffs' claims could not be considered "core" bankruptcy proceedings because they do not involve rights created by bankruptcy law, but instead involve rights created by state law. *See In re Wood,* 825 F.2d at 97 ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding."). Thus, this lawsuit could only be heard by the Bankruptcy Court if Plaintiff's claims are otherwise "related to" the bankruptcy case.

*Id*. at *5–6 (W.D. Tex. Nov. 2, 2007). Here, Plaintiff brings claims of inducement of breach of contract and intentional interference with business relations. Thus, Plaintiff's claims do not involve rights created by bankruptcy law and are not "core" bankruptcy proceedings.  Plaintiff brings these claims against DuraSeal, Inc., not Halferty d/b/a Duraseal, and therefore the claims are not brought against a debtor in any currently-pending bankruptcy proceedings in the Eastern District of North Carolina. Thus, only if this case is otherwise "related to" the bankruptcy case can it be transferred to the transferee court (the United States Bankruptcy Court for the Eastern District of North Carolina).

The Sixth Circuit has adopted the "*Pacor* test" for determining whether a civil proceeding is "related to" a bankruptcy proceeding:

An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. A proceeding "need not necessarily be against the debtor or against the debtor's property" to satisfy the requirements for "related to" jurisdiction. *Id*. However, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b) ]." *Id*. (stating also that "[j]udicial economy itself does not justify federal jurisdiction"). Instead, "there must be some nexus between the

'related' civil proceeding and the title 11 case." *Id*.
*In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (June 3, 1996).

Though Defendant does not address relatedness in this particular context, it does argue (when discussing the "first-to-file" doctrine, which the Court need not reach here, as it finds transfer appropriate on other grounds) that "the issues and claims at stake between this case and the Adversary Proceeding are nearly identical." (Doc. No. 42 at 22). Defendant argues:

> As Mr. Halferty is the sole shareholder and officer of Defendant, Mr. Halferty controls all of Defendant's shares and owns Defendant outright as an S-corporation. Plaintiff has already sued Mr. Halferty multiple times trying to obtain substantially similar relief in the form of injunctions and monetary damages. The Plaintiff is the same between the instant suit and the Adversary Proceeding in the E.D. North Carolina Bankruptcy Court, and the defendants in this case and in the Adversary Proceeding are substantially similar and inextricably intertwined. As this Court observed in its March 26, 2022, Memorandum Opinion and Order on Plaintiff's Motion for Temporary Restraining Order, "to the extent that Plaintiff represents to this Court that DuraSeal[, Inc.] had 'inten[tions]' that were anything other than Halferty's own intentions, or that DuraSeal[, Inc.] 'caused' anything not caused by Halferty's own (causal) conduct, the record to date suggests that Plaintiff is being less than straight with the Court." (ECF No. 15.) As such, there simply is no colorable argument that the parties are not similar.

(*Id*.). Defendant also quotes Bankruptcy Judge Warren's discussion of the relatedness between the bankruptcy proceeding and the proceeding in this Court against Halferty d/b/a Duraseal (Case No. 3:22-cv-00082). Defendant acknowledges that this action is separate from the other proceeding in this Court, but emphasizes their relatedness, stating, "Here, Plaintiff seeks injunctive relief and monetary damages against Defendant DuraSeal, Inc., just as it has sought against Mr. Halferty doing business as 'DuraSeal.' Plaintiff's claims and requested relief are substantially similar across its lawsuits against Defendant and Mr. Halferty doing business as 'DuraSeal.'" (*Id*. at 23).

Plaintiff briefly addresses the issue of the relatedness of this action to the bankruptcy action, stating, "while the claims in the adversary proceeding and this case are somewhat factually

related, the claims are different and the relief is much different. In the adversary case, Plaintiff seeks only to recover for Halferty's post-petition conduct. The relief here is not so limited." (Doc. No. 53 at 23). The Court finds that these distinctions are not enough to overcome the facts demonstrating the relatedness between this action and the bankruptcy proceeding. Most importantly, despite this action being brought against DuraSeal, Inc. rather than Halferty, the outcome of the present action "could alter [Halferty's] rights, liabilities, options, or freedom of action." *In re Dow Corning Corp.*, 86 F.3d at 489.

The Court's research suggests that there is no administrative or other technical impediment to transferring this case directly to the Bankruptcy Court for the Eastern District of North Carolina, rather than to the District Court for the Eastern District of North Carolina (with, perhaps, a suggestion that the district court in turn transfer it the bankruptcy court). It appears that inter-district transfers from a district court to a bankruptcy court do occur, where jurisdiction and venue appear appropriate in that bankruptcy court.[20] Defendant and its parent company's assets are currently being administered in ongoing proceedings in the Eastern District of North Carolina. As

---

[20] For example, one district court in this circuit explained:

> Defendant and its parent company's assets are currently being administered in ongoing proceedings in the Southern District of Georgia. As potential creditors of Defendant due to the nature of claims asserted, Plaintiffs' cause of action relates to the bankruptcy proceedings. The outcome of the instant litigation could affect Defendant's liabilities as well as the administration of the estate. It follows that judicial economy and efficiency are best served by transferring this action to the court where the bankruptcy case is already pending. Accordingly, the Court concludes a transfer to the United States Bankruptcy Court for the Southern District of Georgia is in the interest of justice and will therefore grant Defendant's motion.

*Dwight v. Titlemax of Tennessee, Inc.*, No. 1:09-CV-267, 2010 WL 330339, at *3 (E.D. Tenn. Jan. 21, 2010). And in *Ellington Credit Fund*, although deciding to transfer out-of-district to the district court rather than the bankruptcy court because the case to be transferred was not a "core" bankruptcy proceeding or otherwise "related to" the bankruptcy case, the transferring district court never doubted the authority to transfer out-of-district to a bankruptcy court otherwise appropriate to hear the case.

potential creditors of Defendant due to the nature of claims asserted, Plaintiff's cause of action relates to the bankruptcy proceedings. The outcome of the instant litigation could affect Defendant's liabilities as well as the administration of the estate. It follows that judicial economy and efficiency are best served by transferring this action to the court where the bankruptcy case is already pending.

Further, Plaintiff had an arguable basis for thinking that venue was proper here, as Plaintiff operates its business in this district and Goggins signed his employment contract (which forms the basis for at least one of Plaintiff's claims) here, thus creating a presumption in favor of transfer. *Wesley Corp.*, 749 F. App'x at 450. And as this Court has explained, "[t]here is a strong presumption that the proper venue for a case related to a bankruptcy proceeding is the district in which the bankruptcy proceeding is pending." *Mello v. Hare, Wynn, Newell & Newton*, 2012 WL 2601945, at *4 (M.D. Tenn. July 5, 2012) (citations omitted). Thus, the Court finds that transfer to the United States Bankruptcy Court for the Eastern District of North Carolina is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted, and this action will be transferred to the United States Bankruptcy Court for the Eastern District of North Carolina. Before the Court enters an order granting the Motion and transferring this action, the Court orders the parties to provide additional briefing on two matters related to the outstanding Order to Show Cause (Doc. No. 40), on which briefing is now complete. (Doc. Nos. 45, 50, 56). Specifically, within two weeks of the entry of this memorandum opinion, each party shall submit a filing not to exceed fifteen (15) pages in length that addresses the issues of (1) whether the Court's forthcoming order finding that this Court lacks personal jurisdiction over Defendant means—because the Preliminary Injunction is void *ab initio* or for some other reason—that Defendant is not subject

sanctions for the alleged violation of the Preliminary Injunction (Doc. No. 34), such that the Court's Order to Show Cause (Doc. No. 40) should be vacated; and (2) if Defendant indeed is subject to sanctions for the alleged violation of the Preliminary Injunction, whether this Court would retain jurisdiction to hold the show-cause hearing as to such violations even after transferring the case to the transferee court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE